RALPH J. HENDRIX v. LINN-CORRIHER CORPORATION (SELF-INSURED)

No. 55A86

(Filed 2 July 1986)

1. **Master and Servant § 95— byssinosis—defendant's right to appeal—compensability—not waived**

   The defendant in a byssinosis case did not waive its right to challenge the compensability of plaintiff's disease when it failed to assign as error an Industrial Commission conclusion that plaintiff had a compensable occupational disease; that conclusion was directed to and was dispositive only of the question of whether plaintiff had an occupational disease.

2. **Master and Servant § 95— byssinosis—partial disability—right to challenge not waived**

   The defendant in a byssinosis action did not waive its right to challenge a determination of partial disability by not preserving exceptions to specific findings of fact by the Deputy Commissioner where defendant excepted to and assigned as error both the Commission's adoption of specific findings of the Deputy Commissioner and the Commission's adoption and modification of the Deputy Commissioner's opinion and award.

3. **Master and Servant § 68— byssinosis—partial disability—findings sufficient**

   The Industrial Commission's findings and conclusion that a byssinosis plaintiff was partially disabled were without error where the evidence was sufficient to support the findings required by N.C.G.S. § 97-2(9) and *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, in that the Commission found that plaintiff was unable to find employment in the cotton textile industry due to his inability to pass a breathing test; exertion continued to cause plaintiff shortness of breath and plaintiff should not be exposed to dust, fumes or chemicals; plaintiff had worked in the textile industry for 29 years and had developed job skills unique to that industry; plaintiff had engaged in persistent efforts to obtain any type of employment that might be available but had secured only minimum wage jobs; and the medical testimony established that plaintiff suffered from byssinosis.

4. **Master and Servant § 69— byssinosis—partial disability—amount of award erroneous**

   The Industrial Commission erred by awarding a byssinosis plaintiff with a partial disability full compensation for the time he was unable to find gainful employment and a reduced rate for the five weeks he earned minimum wage at a restaurant. Plaintiff's partial disability could not have rendered him totally unable to earn wages; the evidence showed that he was able to obtain a permanent job with a restaurant at minimum wage and was released only because the restaurant went out of business, and his failure to secure a position paying at least the legal minimum wage must be attributed to general market conditions and not to conditions peculiar to plaintiff or to a lack of such positions under normal market conditions.

5. **Master and Servant § 97.2— byssinosis—new evidence—refusal of Court of Appeals to remand—no error**

    The Court of Appeals did not err by denying defendant's motion to remand a byssinosis award for newly-discovered evidence because N.C.G.S. § 97-47 (1985) provides an avenue of review in the Industrial Commission.

APPEAL of right under N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 78 N.C. App. 373, 337 S.E. 2d 106 (1985), reversing a workers' compensation award by the Industrial Commission. Heard in the Supreme Court on 17 April 1986.

*Lore & McClearen, by R. James Lore, for the plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, by George W. Dennis, III and Linda Stephens, for the defendant-appellant.*

*Woodrow W. Gunter, II, for The North Carolina Academy of Trial Lawyers, amicus curiae.*

MITCHELL, Justice.

This is an occupational lung disease case. At the conclusion of a hearing, a deputy commissioner of the Industrial Commission found and concluded that Ralph J. Hendrix, the claimant-plaintiff, suffered from byssinosis and chronic obstructive pulmonary disease and was permanently partially disabled as a result. The deputy commissioner awarded the plaintiff weekly compensation equal to two-thirds of the difference between his average weekly wage while employed by the defendant and the average weekly wage which he received after his employment with the defendant ended, not to exceed 300 weeks. Both the plaintiff and the defendant appealed to the Industrial Commission. The Industrial Commission adopted the factual findings and the conclusions of the deputy commissioner. The Commission modified only the amount of the award.

The defendant appealed to the Court of Appeals. The Court of Appeals, with one judge concurring in the result and one judge dissenting, reversed stating that the evidence was insufficient to support a finding that the plaintiff was incapable of earning the same wages he had earned before his injury.

The plaintiff appealed to this Court contending that there was competent evidence of record to support the findings and the conclusions of law to the effect that the plaintiff was partially disabled and was entitled to the compensation awarded by the Industrial Commission. The plaintiff further contends the Court of Appeals did not apply the correct legal standard dictated by *Little v. Food Service*, 245 N.C. 527, 246 S.E. 2d 743 (1978). The defendant appealed from the Court of Appeals' denial of its motion to remand for newly discovered evidence. We affirm the denial of the defendant's motion. We reverse the Court of Appeals' reversal of the Commission's award and remand with instructions.

I.

The evidence introduced tended to show that the plaintiff began working in cotton textile mills in 1952 when he was sixteen years old. In 1954, he first began working at Linn Mill (now the defendant Linn-Corriher) in the card room where cotton was processed. He left the defendant in 1961, worked at another textile mill and returned to work in the defendant's card room in 1969. The plaintiff continued to work for the defendant until 11 February 1981 when he was dismissed pursuant to company policy for more than twelve absences per year.

The plaintiff testified before the deputy commissioner that he had an eighth grade education but could not read or write well. His only work experience from 1952 until 1981 was in the cotton textile industry. He has smoked cigarettes since he was thirty-one years old.

The plaintiff's exposure to substantial amounts of cotton dust began in 1954. In 1972, he first noticed chest tightness and a cough. Shortness of breath occurred whenever he participated in strenuous work. However, he could still participate in activities such as bowling and pitching horseshoes. The plaintiff would experience shortness of breath on Sunday which was the first day of his work week. His symptoms would improve throughout the work week. His chest tightness and cough became worse during 1980. In 1981, the plaintiff became sick with pneumonia and was absent from work for nearly three weeks.

Dr. Kelling, an expert witness, testified that in his opinion the plaintiff had byssinosis. The combination of his smoking hab-

its and byssinosis had resulted in a twenty to thirty percent respiratory impairment. Dr. Kelling testified that the plaintiff should not work in an environment containing cotton or cotton dust. He also testified that the plaintiff stated that he was never so short of breath that he was unable to do his job. Dr. Kelling opined that

> Mr. Hendrix would be capable of doing work, which for short periods of time he could lift perhaps five to ten pounds of weight. Where he would be able to walk on a level plane, occasionally could be asked to climb one flight of stairs; certainly anything requiring manual dexterity would be within his range . . . . You would not want him in an environment of dust, fumes, chemical fumes.

After his dismissal by the defendant in 1981, the plaintiff sought employment in other textile mills. He was rejected by each of them when he could not pass a breathing test.

> The deputy commissioner found that the plaintiff was "unable to obtain employment in the cotton textile industry due to his inability to pass the breathing test." The deputy commissioner further found:

> Plaintiff has worked at Sambo's a restaurant, for approximately five weeks at the rate of $3.35 per hour for a 40 hour week or approximately $134.00. Plaintiff was laid off from this job when the restaurant went out of business. Plaintiff has subsequently sought employment at Landis Ice and Fuel, Food Town Grocery Store, The Pantry, Phillip Morris Company and T & O Tile.

The deputy commissioner also found *inter alia* that:

> 9. Plaintiff's chronic obstructive pulmonary disease is mild in nature in that he has approximately 20% to 30% respiratory impairment. Since plaintiff has last been employed in the cotton textile industry his breathing has improved but exertion continues to cause shortness of breath. Plaintiff should not be exposed to dust or fumes or chemicals due to his respiratory impairment. Since plaintiff last worked for defendant Linn-Corriher Corporation on February 11, 1981, he has been and remains partially incapable of engaging in gainful employment. His partial incapacity to work and earn wages results from his permanent physical impairment

caused by his chronic obstructive lung disease and byssinosis which in combination with his age, his limited education and his 29 years of employment in the cotton textile industry limit his ability to earn wages.

Based on his findings, the deputy commissioner concluded that the plaintiff "has a compensable occupational disease." The deputy commissioner also concluded *inter alia*:

2. As a result of his occupational disease plaintiff is and remains partially disabled from working and earning the wages that he was earning when he was last employed by the defendant employer on February 11, 1981. Plaintiff is therefore entitled to weekly compensation, not to exceed 300 weeks equal to sixty six and two thirds percent of the difference between 196.91 his average weekly wage when he last worked for defendant Linn-Corriher, and the average weekly wage which he earned thereafter which is $134.00.

The deputy commissioner then entered an award granting the plaintiff compensation of $41.94 a week in accord with his conclusions.

On appeal, the Industrial Commission adopted the factual findings and the conclusions of the deputy commissioner. The Commission modified the award to the plaintiff, however, by holding that:

In the opinion of the Commission, the provisions of G.S. 97-30 require that the plaintiff be paid his full compensation rate of $131.27 per week when his permanent partial disability prevents him from finding any gainful employment during the period not to exceed 300 weeks beginning 11 February 1981 and the plaintiff's compensation rate should be reduced to 41.94 a week only for the period of five weeks when he earned the minimum wage of $134.00 a week working at the fast-food restaurant. By the same token, and also in accordance with G.S. 97-30, if the plaintiff should find employment in the future earning more or less than the minimum wage, his compensation rate should be adjusted accordingly in accordance with the provisions of G.S. 97-30. The Conclusions of Law and the Award in the Opinion and Award are hereby MODIFIED and CLARIFIED accordingly.

The Court of Appeals reversed the award by the Commission on the ground that the evidence was insufficient to support a finding that the plaintiff was incapable of earning the same wages he had earned before contracting his lung disease.

## II.

## A.

[1]   The plaintiff makes the initial argument that the defendant waived its right to challenge the compensability of his disease when it failed to assign as error the following conclusion of law:

> 1. Plaintiff has chronic obstructive pulmonary disease and byssinosis which are due to causes and conditions characteristic of and peculiar to employment in the cotton textile industry. Such lung diseases are not ordinary diseases of life to which members of the general public are equally exposed outside of that employment. Plaintiff has a *compensable* occupational disease. G.S. 97-53(13); *Rutledge v. Tultex Corporation/Kings Yarn*, 308 N.C. 85 (1983).

(Emphasis added.) The plaintiff contends that by failing to assign error to this conclusion, the defendant in effect conceded that the plaintiff's occupational disease was compensable, and that the only issue before this Court is the propriety of the amount of the award. We disagree.

The plaintiff was required to prove that his disease was an "occupational" disease under N.C.G.S. § 97-53(13) in order to establish that it was of a class which may be compensable under the Workers' Compensation Act, N.C.G.S. Ch. 97.[1] Having met this requirement, the plaintiff still had the burden of proving that the disease caused a disability under N.C.G.S. §§ 97-29 and 54 before

---

1. Byssinosis and chronic obstructive pulmonary disease are not among the prima facie occupational diseases listed in N.C.G.S. § 97-53. Therefore, to be "occupational" under the catch-all provision of § 97-53(13), the plaintiff's disease must be "(1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be 'a causal connection between the disease and the [claimant's] employment.' " *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E. 2d 359, 365 (1983), *quoting Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E. 2d 101, 105-06 (1981); *Booker v. Duke Medical Center*, 297 N.C. 458, 468, 475, 256 S.E. 2d 189, 196, 200 (1979).

an award of compensation could be granted. *Morrison v. Burlington Industries*, 304 N.C. 1, 12-13, 282 S.E. 2d 458, 466-67 (1981); *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857 (1965).

The use of the word "compensable" in the conclusion that the plaintiff had an occupational disease had a tendency to be confusing. However, it is apparent to us that the conclusion was directed to and dispositive of only the question of whether the plaintiff had an "occupational" disease—a disease which would entitle him to compensation if he could show that it had disabled him within the meaning of the Act. Therefore, the failure to except and assign error to this conclusion only prevented the defendant from contending on appeal that the disease was not an occupational disease. It did not amount to a waiver of the right to bring forward on appeal and argue other issues.

### B.

[2] The plaintiff further contends that the defendant waived its right to challenge the determination of partial disability since the defendant did not preserve exception to the specific findings of fact by the deputy commissioner. This argument is without merit. The Commission is the fact-finding body. *Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E. 2d 577, 580 (1976). The defendant excepted to and assigned as error both the Commission's adoption of specific findings of the deputy commissioner and the Commission's adoption and modification of the deputy commissioner's opinion and award. The exceptions and assignments were sufficient to entitle the defendant to appellate review.

### III.

[3] We next turn to the issue of whether the Commission erred by concluding that the plaintiff is partially disabled by his occupational lung disease. The majority of the Court of Appeals held that the plaintiff did not produce evidence sufficient to show that he was not able to earn the same wages he had earned before his injury and, as a result, failed to show that he was disabled within the meaning of the Act. 78 N.C. App. 373, 375, 337 S.E. 2d 106, 108 (1985). We disagree.

In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent. *Hilliard v. Apex Cabinet Co.*, 305

N.C. 593, 290 S.E. 2d 682 (1982); *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857 (1965). In cases involving occupational disease, N.C.G.S. § 97-54 provides that "disablement" is equivalent to "disability" as defined by N.C.G.S. § 97-2(9). *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979). N.C.G.S. § 97-2(9) defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." To support a conclusion of disability, the Commission must find: (1) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment and (3) that the plaintiff's incapacity to earn was caused by his injury. *Hilliard*, 305 N.C. at 595, 290 S.E. 2d at 683.

The Industrial Commission is the fact-finding body. *Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E. 2d 577, 580 (1976). In considering factual issues, the Commission's responsibility is to judge the credibility of the witnesses and the weight to be given to their testimony. *Hilliard*, 305 N.C. at 595, 290 S.E. 2d at 683-84. The reviewing court's inquiry is limited to two issues: whether the Commission's findings of fact are supported by competent evidence and whether the Commission's conclusions of law are justified by its findings of fact. *Hansel v. Sherman Textiles*, 304 N.C. 44, 49, 283 S.E. 2d 101, 104 (1981). When the Commission's findings of fact are supported by competent evidence, they are binding on the reviewing court in spite of the existence of evidence supporting contrary findings. *Walston v. Burlington Industries*, 304 N.C. 670, 677, 285 S.E. 2d 822, 827 (1982).

The Commission adopted the findings of fact and conclusions of law of the deputy commissioner. The findings only barely satisfy the three-part test of *Hilliard* which must be met before the Commission may conclude properly that a claimant is disabled. We emphasize here that the findings of the deputy commissioner adopted by the Commission should have been stated much more specifically in the terms of the three parts of the *Hilliard* test.

The findings include a finding that the "[p]laintiff has been unable to obtain employment in the cotton textile industry due to his inability to pass the breathing test." This finding is supported

by competent evidence. Dr. Kelling testified that the combination of the plaintiff's smoking habits and his byssinosis had resulted in a twenty to thirty percent respiratory impairment. Dr. Kelling opined that the plaintiff should not work in an environment containing cotton or cotton dust. The plaintiff testified that he applied for jobs at several other textile mills. He was refused employment at each of them after he took a breathing test. The foregoing evidence supports the finding that the plaintiff was unable to obtain employment in the cotton textile industry due to his inability to pass the breathing test. Although neither the deputy commissioner nor the Commission specifically so stated, this amounted to a finding that the plaintiff was incapable of earning the same wages he had earned before his injury in the same employment — employment in the cotton textile industry.

The Commission also failed to make a finding specifically stating that the plaintiff was incapable of earning the same wages he had earned before his injury in any other employment. The Commission did find, however, that exertion continued to cause the plaintiff shortness of breath and that, due to his occupational disease, the plaintiff should not be exposed to dust, fumes or chemicals. The Commission also specifically found that since the plaintiff had last worked for the defendant "he has been and remains partially incapable of engaging in gainful employment." These findings, taken together with the Commission's findings with regard to the plaintiff's permanent physical impairment, his age, limited education and job experience and efforts to secure employment, were minimally sufficient to meet the second part of the *Hilliard* test.

The defendant contends and the Court of Appeals held, however, that even if the findings were sufficient, the evidence was insufficient to support a finding that the plaintiff was incapable of earning the same wages he had earned before his impairment by occupational disease in any other employment. We do not agree.

In considering whether the plaintiff is incapable of earning the same wages at other employment, the Commission and the reviewing court must focus not on "whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff [him]self has such capacity." *Lit-*

*tle v. Food Service*, 295 N.C. 527, 531, 246 S.E. 2d 743, 746 (1978). This Court recently stated:

> If preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or who possesses superior education or work experience.

*Peoples v. Cone Mills Corp.*, 316 N.C. 426, 441, 342 S.E. 2d 798, 808 (1986), citing *Little v. Food Service*, 295 N.C. 527, 532, 246 S.E. 2d 743, 746 (1978). *See*, 2 Larson, *Workmen's Compensation*, § 57.61 (1983). *See generally*, Note, *Workmen's Compensation— Using Age, Education, and Work Experience to Determine Disability—Little v. Anson County Schools Food Service*, 15 Wake Forest L. Rev. 570 (1979).

From the opinion below, it is apparent that the majority of the Court of Appeals failed to give proper consideration to characteristics peculiar to the plaintiff. The evidence established that the plaintiff had worked in the textile industry since the age of sixteen—twenty-nine years. Although he completed the eighth grade, the plaintiff could not read or write with any degree of proficiency. The plaintiff testified that he could not read a newspaper aloud or spell.

From twenty-nine years in the cotton textile mills, the plaintiff developed job skills unique to that industry. His lack of education and limited work experience led to a specialization in the cotton textile industry. His occupational disease now prevents him from obtaining employment in that industry.

Although the evidence showed that the plaintiff engaged in persistent and commendable efforts to obtain any type of employment at all which might be available, he was only able to secure a job as a restaurant "bus boy" at the legal minimum wage and one other brief job in construction work. The minimum wages the plaintiff received in each of these positions were substantially less than the wages he had earned while employed by the defendant. The plaintiff's persistent efforts to obtain other employment

met with no success. The wages received by a claimant after his injury are strong but not conclusive evidence of his ability to earn for purposes of determining whether he is disabled within the meaning of N.C.G.S. § 97-2(9). *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 85, 155 S.E. 2d 755, 762 (1967). *See Peoples*, 316 N.C. at 440, 342 S.E. 2d at 807.

The evidence presented was sufficient to support the finding that the plaintiff "has been and remains partially incapable of engaging in gainful employment" and that his occupational disease combined with his age, limited education and work experience "limit his ability to earn wages." Therefore, the evidence was sufficient to show that *this plaintiff* was unable to earn wages in other employment equal to those he had earned while employed by the defendant before his impairment by his occupational disease.

The evidence also supported the Commission's finding of the third *Hilliard* factor: that the plaintiff's incapacity to earn was caused by his injury. The medical testimony established that the plaintiff suffered from byssinosis and chronic obstructive lung disease as a result of twenty-nine years of smoking and exposure to cotton dust. The evidence also tended to show that the combination of his respiratory impairment and personal characteristics of age, education, and work experience had produced a partial incapacity to earn wages at the same or other employment equal to those he had earned before his injury. Such evidence was sufficient to support the finding that the plaintiff's inability to earn was a result of his occupational disease.

The evidence was sufficient to support the findings required by N.C.G.S. § 97-2(9) and *Hilliard*. 305 N.C. at 595, 290 S.E. 2d at 683. The Commission's findings and its conclusion that the plaintiff was partially disabled were without error. The decision of the Court of Appeals to the contrary was error.

IV.

[4] The deputy commissioner awarded the plaintiff weekly compensation, not to exceed 300 weeks, equal to two-thirds of the difference between his average weekly wage when he last worked for the defendant and the average weekly wage which he received thereafter when he worked at the legal minimum wage.

This award by the deputy commissioner would have resulted in compensation of $41.94 a week to the plaintiff. The Commission modified the award to a full compensation rate of $131.27 a week when the plaintiff was unable to find gainful employment, not to exceed 300 weeks. The modified award also provided, however, that the plaintiff was to receive only $41.94 a week for the five week period when he earned the legal minimum wage working at the restaurant. We find error in the Commission's method of setting the amount of the award.

The social policy behind the Workers' Compensation Act is twofold. First, the Act provides employees swift and certain compensation for the loss of earning capacity from accident or occupational disease arising in the course of employment. *Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E. 2d 244, 246 (1985); *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 427, 146 S.E. 2d 479, 484 (1966). Second, the Act insures limited liability for employers. *Id.* Although the Act should be liberally construed to effectuate its intent, the courts cannot judicially expand the employer's liability beyond the statutory parameters. *Rorie v. Holly Farms Poultry Co.*, 306 N.C. 706, 709, 295 S.E. 2d 458, 461 (1982).

The Act provides compensation for the loss of wage-earning *ability*. N.C.G.S. § 97-2(9) (1985). "Compensation must be based upon the loss of wage earning power rather than the amount actually received." *Hill v. Dubose*, 234 N.C. 446, 447-48, 67 S.E. 2d 371, 372 (1951).

Although the Commission concluded that the plaintiff was permanently partially disabled, it awarded him compensation based upon a total loss of wage earning ability. The Commission reduced his compensation only for the few weeks he actually worked at the restaurant. The Commission justified this award by stating that in its opinion N.C.G.S. § 97-30 required that the plaintiff be awarded undiminished compensation for those periods when his permanent partial disability prevented him from finding any gainful employment. We find the Commission's award self-contradictory in this regard.

The plaintiff's partial disability could not have made him totally unable to earn wages. If he was partially incapable of earning wages, then he must have been partially capable of earning some, albeit diminished, wages. To the extent the plaintiff was

partially able to earn wages, he received a windfall when he was awarded compensation at a rate equal to two-thirds of his entire average weekly wage before his injury.

The evidence in this case tended to show that after failing to obtain employment in the cotton textile industry, the plaintiff made an earnest and highly commendable search for other employment. He applied for work as a garbage man, truck driver, cashier, tile layer and duck chiller, but in each case was unsuccessful. He was able to obtain a permanent job with a restaurant at the minimum wage and was released from that employment only because business conditions resulted in the restaurant going out of business.[2] Such evidence supported the findings and conclusions of the deputy commissioner and the Commission to the effect that the plaintiff was able to carry out the duties of at least some permanent positions paying the legal minimum wage and available under normally prevailing market conditions. *See generally, Peoples*, 316 N.C. 426, 342 S.E. 2d 798 (1986). Therefore, his failure to secure such a position must be attributed to the general market conditions prevailing at the time he sought work and not to conditions peculiar to him or to the lack of such positions under normally prevailing market conditions. *Id.*

Having adopted the deputy commissioner's findings of fact and conclusions of law as its own, the Commission was required in this case to enter an award setting the plaintiff's compensation at two-thirds of the difference between his average wage of $196.91 a week while working for the defendant and the minimum wage of $134.00 a week which he received thereafter — an award of $41.94 per week, not to exceed 300 weeks.

---

2. The plaintiff urges this Court to adopt the doctrine of the "odd-lot" worker. Under the "odd-lot" doctrine, "total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market." 2 Larson *Workmen's Compensation* § 57-51 (1983). Under this doctrine, if the claimant establishes a prima facie case that he is an odd-lot worker, the burden then shifts to the employer to show the existence of work that is regularly available to the claimant. *Id.*

We decline to consider the "odd-lot" doctrine at this time for two reasons. First, the issue is not properly presented on appeal. Second, even if adopted, the evidence in the present case would not seem to require application of the doctrine.

V.

[5] The defendant assigns as error the Court of Appeals' interlocutory order filed 28 January 1985 denying its motion to remand for newly discovered evidence. The defendant says that the plaintiff became employed on 13 February 1984 earning wages of $170.00 a week which were subsequently raised to $220.00 a week. The defendant contends that this new evidence is relevant to the issue of earning capacity and that a new hearing should be granted upon the grounds of newly discovered evidence. *McCulloch v. Catawba College*, 266 N.C. 513, 146 S.E. 2d 467 (1966).

The Court of Appeals did not err by denying the motion to remand. The Act sets forth a procedure to follow when a change of conditions has occurred. It provides in pertinent part:

> Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded . . . .

N.C.G.S. § 97-47 (1985). The defendant may utilize the avenue of review provided by the Act in seeking diminution of the award upon the ground of a change of conditions.

For the foregoing reasons, we affirm the Court of Appeals' denial of the defendant's motion to remand for newly discovered evidence. We reverse the decision of the Court of Appeals reversing the Commission's opinion and award and denying the plaintiff compensation on the ground of insufficiency of the evidence. This case is remanded to the Court of Appeals with instructions that it be further remanded to the Commission for the entry of an award consistent with this opinion.

Affirmed in part, reversed in part and remanded with instructions.