Plaintiff contends that as a result of her compensable injury of October 9, 1986, she is permanently and totally disabled. Defendants contend that any permanent disability sustained by plaintiff, partial or total, was not caused by her accident. The greater weight of evidence — and particularly the objective medical tests results and the interpretation by the several physicians who saw her — support the conclusion that her pain cannot be found to be related to the compensable accident beyond the four month period that (according to plaintiff's March 15, 1989 letter to the Commission) compensation was paid. That evidence suggests that the accident temporarily exacerbated her symptoms, but that any physical cause of her pain thereafter is more likely to be due to the scarring that developed from the non-work related surgery.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Liberty Mutual Insurance Company is the insurance carrier for the defendant employer.
3. On October 9, 1986, plaintiff sustained an injury by accident arising out of and in the course of her employment.
4. The accident resulted in injuries to plaintiff's back and right leg.
5. Plaintiff's average weekly wage was $160.00, yielding a compensation rate of $106.67.
6. Pursuant to the Form 21 agreement, plaintiff was paid compensation for temporary total disability for a period not specifically identified in the record.
****************
Based upon the competent, credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff, now fifty-seven years old, went through the tenth grade in school. She has not received any vocational training nor obtained a General Equivalency Degree ("GED") since leaving secondary school. Plaintiff's past employment consisted of work in the hosiery industry, housekeeping, and restaurant work. She worked for Phillips Hosiery for almost a year as a toe-seamer prior to her employment with defendant. Prior to this, she worked as a housekeeper for about two and a half years, at a local Burger King restaurant for three to four months, and as a seamer for Wycoff Hosiery Mills for approximately ten to fifteen years.
2. Plaintiff began working for defendant, Carolina Associated Mills in July of 1986. On October 9, 1986, plaintiff was working as a quality control inspector of knitting machines.
3. Plaintiff was injured in an accident at defendant's mill on October 9, 1986. Her job at the time of the accident was going to different knitting machines and checking socks for defects. If a defect was found, she would flag the machine with the sock. She would monitor approximately 588 to 600 knitting machines. There was no heavy lifting involved in her job, except on occasion she would have to lift socks out of the canister to inspect them. However her work required constant walking, bending and stooping.
4. The accident, which defendant accepted as compensable, occurred when plaintiff was struck in the lower back by a buggy driven by a co-employee while she was flagging a machine.
5. Prior to her injury in 1986, she had had surgery on her back by Dr. William Sims, who had performed bilateral laminectomies and discectomies in April, 1986. Plaintiff never had any surgery on her back since that time or after her October 9, 1986 injury. The problems with plaintiff's back which Dr. Sims treated through surgery were not work-related; the surgery followed her employment with Phillips Hosiery Mill, and preceded her employment with defendant.
6. Dr. P. E. Brown's report at Frye Regional Medical Center for February 5, 1987 states that plaintiff was admitted for further evaluation after an injury at work on October 9, 1986. His impression was a low back strain with a possible recurrent disc. Dr. Brown made no findings as to the problems that he found that were related to her October 9, 1986 injury, but instead his notes states "recurrent disc."
7. Dr. Brown referred plaintiff to Dr. David Kelly, Jr. of Winston-Salem, North Carolina. Dr. Kelly's records show that "I have told Ms. Hoyle that I see no evidence that she has an unstable spine or needs a fusion. I see no evidence that she has an extruded or ruptured disc. I would be inclined to treat her conservatively with limited activity and weight loss." Plaintiff later returned to Dr. Kelly on September 3, 1987, and he then stated, "I went over her entire problem with her stating that we really couldn't find anything on examination of her back. Her myelogram, CAT scan, bone scan, and PNCV studies were all within normal limits."
8. On August 1, 1988, Dr. Kelly noted that he had reviewed the electrical studies, which showed no evidence of any nerves pinched or compressed. He gave plaintiff a rating of 10% permanent partial disability to the spine.
9. Dr. McCloskey also prepared a consultation note on September 21, 1988, which discussed whether or not future surgery would be done. This was never scheduled.
10. Dr. McCloskey on November 7, 1988, gave plaintiff a rating of a 10% permanent partial impairment to her spine and noted that no surgery was planned.
11. Plaintiff was referred for rehabilitation to Dr. Andrea Stutesman on December 19, 1988. Dr. Stutesman's impression was that the plaintiff had chronic pain syndrome, status post previous discectomy and probably scarring causing continued irritation of the nerve. Dr. Stutesman believed that plaintiff's problems were a result of the scar from Dr. Sims' previous operation and not any accident of October 9, 1986.
12. Plaintiff also saw Dr. Donald Glugover of Valdese, North Carolina. Dr. Glugover gave her a CAT scan and reviewed her x-rays to determine what further evaluation needed to be done. A myelogram was later ordered by Dr. Glugover. Dr. Glugover noted as follows:
 Completion of the work-up revealed that there were not acute changes in all of the work-up, except for the post-operative changes from her previous surgery were within limits that would be anticipated after an operation.
 This patient has been through a fairly extensive work-up, which has failed to give any clear cut etiology for pain related to the accident she was in.
At that time, Dr. Glugover had no way to determine how much of her disability was from her prior surgery and how much was for the accident.
13. Dr. Joseph Nicastro also saw the employee, but referred her to Dr. Branch of Bowman Gray Medical School. Dr. Branch's report of December 4, 1991, notes that: "This is a pleasant lady who is fifty-five. She has had back problems for a long time. She had back and bilateral buttock pain that began in late 1985 or `86. She was operated on by Dr. Sims in April 1986, but has never really gotten well after initial problems."
14. The medical records of Dr. Branch and Dr. Nicastro do not include any finding of a causal relationship between plaintiff's original injury at work in 1986 and the current problems she is experiencing. The medical records from Dr. Glugover and Dr. McCloskey state that they cannot say for a fact whether her problems result from her most recent injury or her pre-existing condition. Dr. Branch's notes also show that plaintiff has had constant problems since Dr. Sims' surgery in 1986.
15. Plaintiff has had and continues to have severe back pain which often radiates down into her right leg. Despite numerous examinations and testing, her pain continues unabated, except while she is wearing a body brace. Plaintiff can no longer perform her vocationally relevant past work. Further, she has no transferable skills. She testified that she was unable to return to work despite earlier attempts to do so. Plaintiff would be unable to return to work in the hosiery industry due to her inability to bend, stoop, or sit for any sustained period of time. Because of the pain plaintiff cannot bend, walk or sit for a long period of time. She has been unable to drive an automobile since October 9, 1986. She doesn't lift anything heavier than a gallon of milk. Plaintiff is unable to bend over and pick up things around the house. She has problems sleeping at night. She has to lie down once or twice during the day.
16. Plaintiff has been incapable of earning the same wages she earned before her injury on October 9, 1986, in the same employment, and has been incapable of earning the same wages she earned before her injury in any other employment.
****************
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. To support a conclusion of disability, the Industrial Commission must find (1) that the plaintiff was incapable after her injury of earning the same wages she earned before her injury in the same employment; (2) that the plaintiff was incapable of earning the same wages she earned before her injury in any other employment; and (3) that the plaintiff's incapacity to earn was caused by her accident. Hendrix v. Linn-Corriher Corp. 317 N.C. 179 (1986)
2. Plaintiff has the burden of establishing by expert testimony the causal connection between her injury of October 9, 1986, the treatment she received, and any periods of disability she may have suffered. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 167-169 (1980).
3. Here plaintiff has not sustained that burden. The medical evidence is inconclusive as to the causal relation between the accident of October 9, 1986 and the back problems which plaintiff continues to suffer and the permanent partial back disability for which she has received ratings ranging from 10 to 15 percent, or the total disability which she claims. At least two of the physicians who examined or treated plaintiff's indicate there is a causal connection between her continuing and current problems and the surgery performed in 1986 by Dr. Sims, which was not occasioned by an injury at work.
****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim must under the law be, and it hereby is DENIED.
2. Each side must pay their own costs.
 S/ _____________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ FORREST H. SHUFORD, II DEPUTY COMMISSIONER
S/ ________________________ COY M. VANCE DEPUTY COMMISSIONER
JRW/RCH/tmd 12/7/94