The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of Finding of Fact Number Twelve and Conclusion of Law Number One and the deletion of Conclusions of Law Numbers Two and Three.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer. The defendant-employer is self-insured with Gallagher Bassett Services, Inc. serving as the servicing agent.
3. Plaintiff's average weekly wage is as set forth on the Form 22 (Wage Chart).
4. The plaintiff was alleging an injury by accident on June 7, 1995, when he slipped and fell and allegedly injured his back.
5. The defendant-employer admitted that the plaintiff suffered a slip and fall on June 7, 1995, but it denies that he suffered any injury resulting from the fall.
6. The issues to be determined by the Commission are whether there is a causal connection between plaintiff's present condition and the original slip and fall, and whether counsel for plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff began employment with defendant-employer on August 29, 1994, as an automotive technician/mechanic. On his employment application, plaintiff indicated he had previously worked for Pep Boys as a mechanic. He further indicated he had diplomas from Long Beach High School and the American Motor Institute.
2. Plaintiff completed a "Medical History", wherein he stated he had never previously filed for workers' compensation, injured his spine, back or neck or undergone any back examination. However, plaintiff had slipped and fallen in some rainwater at Pep Boys on May 4, 1994, and injured his back.
3. Plaintiff's duties as a mechanic for the employer included checking and changing tires, alignments, brake and clutch work, and electrical repairs. His job duties regularly required lifting, bending, stooping and squatting. On May 18, 1995, plaintiff approached his supervisor, Jeff Byrne, and store manager, Dick Arthurs, about a raise. He threatened to leave if he did not receive a pay increase.
4. On June 7, 1995, plaintiff slipped and fell while cleaning out his service bay. He struck his head. When the supervisor inquired about plaintiff's condition, plaintiff indicated he had hurt his head and appeared to have a knot on his head. He did not mention anything about back or leg pain.
5. On June 9, 1995, plaintiff consulted Ronald Jandebeur, a certified family nurse practitioner, at the Nalle Clinic. On that occasion, he complained of tenderness of the scalp and neck pain. Plaintiff did not mention any pain in his low back or lower extremities. Mr. Jandebeur instructed plaintiff to remain out of work for 72 hours.
6. On June 12, 1995, plaintiff returned to work without restrictions. He continued working until June 21, 1995. He did not complain to his supervisors about back or leg problems. He did not refuse any assignment he received, although his work required him to lift, bend and stoop. On the morning of June 21, plaintiff made two or three trips from the shop to the sales area, where Mr. Arthurs' office was located. Each time he demanded to know about his raise. He finally informed Mr. Arthurs that if he did not get his raise, he would leave. Mr. Arthurs could not grant plaintiff's request. According to plaintiff, he walked from the office to his service bay where "I threw my tools in the car and went to the doctor." Plaintiff had two toolboxes, which weighed approximately 150 pounds each.
7. Plaintiff quit his job on June 21 because he did not get a raise. Plaintiff also remarked to Mr. Arthurs as he left: "This is not over," and pointed to his neck.
8. Plaintiff returned to the employer's business on June 23, 1995, wanting his job back. Mr. Arthurs could not rehire plaintiff at that time. Plaintiff returned to the Nalle Clinic on June 23 and for the first time complained of low back and leg pain. Dr. Iruela did not note any gait abnormalities on that visit. X-rays of plaintiff's lumbar spine revealed degenerative disc disease, without evidence of acute injury. Thereafter, plaintiff saw Dr. Zucker and Dr. Laxer, orthopedic surgeons at the Nalle Clinic. A lumbar CT scan obtained on June 30, 1995, revealed degenerative changes at L3-S1, without significant spinal stenosis or focal disc herniation. Plaintiff also had a normal EMG. When plaintiff saw Dr. Laxer at the Nalle Clinic on August 10, 1995, he denied any past problems with his back. Plaintiff continued to complain of low back and right leg pain, but he had "no strong objective findings to support a diagnosis of radiculopathy." Dr. Laxer noted on October 5, 1995, that plaintiff's extensive workup had not yielded a diagnosis. He recommended a pain clinic.
9. On November 13, 1995, plaintiff presented to the Southeastern Pain Clinic, where he was seen by Dr. Jaszewski. Dr. Jaszewski recommended a diagnostic differential subarachnoid block due to a component of psychological overlay. This study suggested mechanical pain or a nerve injury. Plaintiff saw Dr. Romanoff on December 4, 1995, and was diagnosed with degenerative disc disease.
10. Dr. Miller assumed plaintiff's care at Southeastern Pain Clinic on December 11, 1995. He recommended a series of facet joint injections. Plaintiff reported 80 percent improvement in his condition after one week. Plaintiff's complaints thereafter increased, and on April 3, 1996, Dr. Miller performed an L3-4, L4-5, L5-S1 bilateral radio frequency facet neurolysis. Plaintiff reported 50 percent improvement in his symptoms. Dr. Miller did not anticipate further treatment. He could not address plaintiff's ability to work without a functional capacity evaluation.
11. Dr. Miller did not receive all of the Nalle Clinic records when he evaluated plaintiff. He did not know plaintiff had fallen at work with Pep Boys on May 4, 1994, and had been diagnosed with a low back contusion. He did not know that on plaintiff's initial visit to the Nalle Clinic, he failed to complain of low back or leg pain, and had no clinical findings with reference to his back and right leg. Plaintiff did not tell Dr. Miller he worked from June 12 to June 21, 1995, without complaining of back or leg pain, despite the strenuous nature of his job. Dr. Miller knew plaintiff's EMG was normal, which indicated he did not have nerve compression in the spine or peripherally. Plaintiff's CT scan suggested facet degeneration, which results from normal wear and tear. Large people, such as plaintiff, in general have a lot of degenerative disease in the low back. Facet degeneration can cause pain. Plaintiff's complaints were consistent with his size and degenerative spine condition. Plaintiff's low back problem could have resulted from loading his toolboxes. When given the details of plaintiff's alleged back condition, Dr. Miller felt it more likely developed from throwing the toolboxes. He refused to state that plaintiff's condition was caused by the fall on June 7, 1995. He agreed only that there was a "possibility" that the fall caused pain.
12. There is insufficient evidence of record to prove by its greater wieght that plaintiff injured his back when he slipped and fell. On June 7, 1995, according to Dr. Miller, plaintiff's complaints are entirely consistent with his size and degenerative spine condition, without evidence of any alleged trauma.
* * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
It is axiomatic that to recover benefits under the Workers' Compensation Act, an employee must prove he sustained a compensable injury by accident which caused disability. (i.e., the incapacity to earn wages). Hendrix v. Linn-CorriherCorp., 317 N.C. 179, 345 S.E.2d 374 (1986); Anderson v. MotorCo., 233 N.C. 372, 64 S.E.2d 265 (1951). The burden is on the employee to prove his condition is causally related to a compensable injury by accident. Morrison v. Burlington Industries, 304 N.C. 1,282 S.E.2d 458 (1981). This burden must be met with competent medical evidence. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980). The employee may not rely upon mere speculation or innuendo to establish causation. Ballenger v. Burris Industries,66 N.C. App. 556, 311 S.E.2d 881 (1984). The Commission is not obligated to resolve all medical issues in an employee's favor.Cauble v. Macke Co., 78 N.C. App. 793, 338 S.E.2d 320, (1986);Rooks v. Cement Co., 9 N.C. App. 57, 175 S.E.2d 324 (1970). The medical evidence in the present case fails to establish, by the greater weight of the evidence, that plaintiff's injury on June 7, 1995 caused his allegedly disabling low back condition.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim for workers' compensation benefits to his back is hereby DENIED.
2. Each side shall pay his own costs.
This the 18th day of June, 1997.
 S/ __________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
LKM:jmf