***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with modifications the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer on September 30, 2003.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage was $328.20, which would result in a compensation rate of $218.81.
5. The employee sustained an injury by accident on April 1, 2003.
6. The injury arose out of and occurred in the course and scope of the plaintiff's employment.
7. The issues to be determined are as follows:
(a) To what indemnity benefits, if any, is plaintiff entitled?
(b) Is plaintiff entitled to ongoing medical treatment for injuries sustained in the alleged accident arising out of and in the course of her employment?
(c) Is plaintiff entitled to have medical bills paid for injury sustained in the alleged accident arising out of and in the course of his (sic) employment?
(d) Did plaintiff refuse work within her restrictions?
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, the plaintiff was a 58-year-old female living in Vanceboro, North Carolina. Plaintiff had worked for Community Management Corporation for 9 years and was employed at the Westwood Arms Apartment complex on April 1, 2003, her date of injury.
2. On April 1, 2003, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment when she slipped and fell near the bathroom, landing on her right side.
3. As a result of her accident, plaintiff sustained injuries to her head, neck, right shoulder, right leg and right ankle.
4. Plaintiff worked on April 2, 2003, the day after her injury, and then stopped coming to work. There was some attempted communication between plaintiff and Gina Eckert, Regional Manager for Community Management Corporation regarding plaintiff's ability to work. Plaintiff requested that she be allowed to take vacation or sick leave to stay out of work; however, plaintiff did not have vacation or sick leave to take. Ms. Eckert requested that plaintiff provide defendant-employer with an out-of-work note from her physician. Plaintiff was unable to produce an out-of-work note from any of her physicians because she had never been written out of work.
5. Plaintiff first presented to the office of Dr. Ray Armistead on April 16, 2003 and received treatment from Dr. Armistead's associate, Dr. Gillespie, who noted that plaintiff could return to work with a 5 lb. lifting restriction. Plaintiff did not return to work at that time.
6. As a result of her injury by accident, plaintiff required right shoulder surgery on October 17, 2003. If Plaintiff had been working with employer-defendant at the time, she would have been written out of work for 6-8 weeks after her surgery, and would have been capable of light duty work after that time.
7. On January 29, 2004, Dr. Armistead released plaintiff from his care with a 12% permanent partial disability rating to her right upper extremity. Dr. Armistead was of the opinion that plaintiff would have been able to lift up to 25 lbs. but would have been restricted from any overhead activity at the time of her release.
8. On April 16, 2003, defendant-employer sent a warning letter to plaintiff via registered mail informing plaintiff that her failure to return to work was a violation of company policy. Plaintiff was advised to either: (a) report to work, (b) bring a medical note indicating that she should be out of work, or (c) request medical leave.
9. Plaintiff indicated to Ms. Eckert that she would have to resign from her position with the employer. Although she intended to resign, plaintiff reported to work on April 21, 2003, worked for 3 hours and then left after turning in her keys.
10. Plaintiff's actions on April 16, 2003, are deemed to be a voluntary resignation. Plaintiff testified she quit because she was in considerable pain on April 21, 2003 and was unable to work in pain. The record is void, however, that plaintiff returned to Dr. Armistead to inform him that she was unable to work due to pain; nor was there evidence that Dr. Armistead wrote plaintiff out of work. Plaintiff's testimony concerning her inability to work is not accepted as credible.
11. Both plaintiff and Ms. Eckert testified that plaintiff's job duties were within the light duty restrictions given by Dr. Armistead. Plaintiff testified that her job with defendant-employer, as it was performed before April 1, 2003, would not have been a problem, even given light duty restrictions.
12. Plaintiff further testified that the prescription medication prescribed for her by Dr. Armistead made her sick, and the sling she was wearing on her right arm made it difficult for her to drive.
13. Defendant-employer would have been able to continue to employ plaintiff, even with her light duty restrictions, if she had not voluntarily resigned. Plaintiff's voluntary resignation constituted an unjustified refusal to accept suitable employment.
14. Plaintiff returned to Dr. Armistead on May 2004 with complaints of neck pain. Dr. Armistead treated plaintiff's neck symptoms until October 28, 2004, and then released her with the additional restrictions of avoiding neck extension.
15. Dr. Armistead gave the plaintiff a 10% permanent partial disability rating to her neck on October 28, 2004.
16. The treatment provided to plaintiff by Dr. Armistead, Dr. Gillespie, Beaufort Community Hospital and Craven Regional Medical Center for her neck and arm injuries, was reasonably related to her injury by accident and was reasonably required to effect a cure, provide relief and lessen her disability.
17. Plaintiff received an unspecified period of unemployment benefits, starting in May 2003. As a result of her compensable injury by accident, plaintiff was incapable of working in any employment from the date of her shoulder surgery on October 17, 2003 through a period of 8 weeks thereafter when Dr. Armistead opined that she would have been able to return to light duty, restricted work if she had not voluntarily resigned.
18. Defendants are entitled to a credit offset for unemployment benefits plaintiff received during the 8-week period plaintiff was entitled to temporary total disability benefits.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 1, 2003, plaintiff sustained an injury by accident to her neck and arm, which arose out of and in the course and scope of her employment with the employer-defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability for an 8-week period after plaintiff's surgery due to the fact that Dr. Armistead would have written her out of work during that time. N.C. Gen. Stat. § 97-29.
3. As a result of her injury, plaintiff required right shoulder surgery on October 17, 2003. As a result of her injury, plaintiff sustained a 12% permanent partial impairment to her right upper extremity and a 10% permanent partial impairment to her neck and is entitled to compensation. N.C. Gen. Stat. § 97-31.
4. As the result of her May 12, 2003 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including past and provided by Dr. Armistead, Dr. Gillespie, Beaufort Community Hospital and Craven Regional Medical Center. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. Following her injury, plaintiff voluntarily resigned from her job even though suitable work was available within her restrictions. Plaintiff's resignation constituted an unjustified refusal of suitable employment. Plaintiff is not entitled to temporary total disability benefits except for the 8-week period that she would have been unable to work due to the surgery, which was causally related to her admittedly compensable injury.See N.C. Gen. Stat. § 97-33; Hendrix v. Linn Corriher, Corp., 317 N.C. 179,345 S.E.2d 374 (1986); Anderson v. Northwestern Motor Co., 233 N.C. 372,54 S.E.2d 265 (1951); Pruitt v. Knight Publishing Co., 27 N.C. App. 254,218 S.E.2d 876 (1975), rev'd on other grounds, 289 N.C. 254, 221 S.E.2d 335
(1976).
6. Defendants are entitled to a credit offset for unemployment benefits plaintiff received during the 8-week period plaintiff was entitled to temporary total disability benefits. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay the plaintiff permanent partial disability compensation in the amount of $218.81 per week for 28.8 weeks for the 12% rating to plaintiff's right arm and for 30 weeks for the 10% rating to her cervical spine (back). This compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay plaintiff temporary total disability compensation for a period of 8 weeks after her surgery when she was incapable of working, subject to a credit offset for unemployment benefits plaintiff received during this period of 8 weeks. This compensation has accrued and shall be paid in a lump sum.
3. Defendants shall continue to pay for any medical treatment, which is required by plaintiff as a result of her compensable injury for so long as such treatment is reasonably required to effectuate a cure, provide relief or lessen her disability, according to procedures adopted by the Industrial Commission.
4. An attorney's fee of 25% shall be deducted by defendants from the compensation awarded plaintiff herein and paid directly to plaintiff's attorney.
5. Defendants shall pay that costs of this claim.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER