***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act. *Page 2 
2. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. The alleged injury that is the subject of this claim occurred sometime in September 2006.
5. In September 2006, Defendant-Employer was insured by Stonewood Insurance Company.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Parties' discovery responses
 • Exhibit 4: Transcript of pre-hearing deposition of plaintiff
 • Exhibit 5: Plaintiff's medical records
The following documents and materials were accepted into evidence as Defendants' exhibits:
 • Exhibit 1: Surveillance reports
 • Exhibit 2: DVDs of surveillance footage
Transcripts of the depositions of the following were also received post-hearing:
 • Dr. Neil H. Musselwhite
 • Dr. George V. Huffmon, III (with Plaintiff's Exhibits 1-9) *Page 3 
 • Dr. Mark Foster
 • Alan Simmerman, P.T. (with Defendants' Exhibit 1)
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 51 years old at the time of the hearing before the Deputy Commissioner, with a date of birth of April 1, 1957. He graduated from UNC-Wilmington in 1980 with a degree is geology and worked in the oil business for some time. He started working construction, as a carpenter, in about 1989 and has been in that line of work ever since.
2. Plaintiff began working for defendant on or about June 26, 2006 as a carpenter and job coordinator. His average weekly wage at this time was $630.49 which yields a weekly compensation rate of $420.35.
3. On or about September 14, 2006, plaintiff was on a demolition job with defendant. The tip of a 90-pound jackhammer became stuck in some concrete that was being broken up, and plaintiff tried to pull the jackhammer out of the concrete. As he pulled up on the jackhammer, plaintiff felt a pop in his low back. Plaintiff immediately felt pain and fell to his knees. After a few minutes, plaintiff began to feel pain and numbness going down his right leg.
4. Plaintiff had had back pain prior to this incident, but never to this degree and character, and never with radiation down his right leg. Plaintiff characterized his right leg as "paralyzed."
5. Plaintiff left work early that day and missed work the next day because he was in so much pain. Eddie Brock, the principal of defendant, called plaintiff to ask him where he was, *Page 4 
and plaintiff told him that he had hurt his back at work the day before. Brock did not offer to send plaintiff to a doctor, but wanted plaintiff to come into work and supervise while sitting down. Plaintiff declined to do so.
6. Plaintiff waited a few days to seek medical treatment, figuring that his pain might improve on its own. When his pain did not improve, plaintiff decided to seek medical treatment on his own.
7. Plaintiff went to see Dr. James D. Hundley, an orthopedist, on September 20, 2006. Dr. Hundley noted that plaintiff had very limited lumbar motion, a positive straight leg raising test on the right, marked weakness in the right extensor hallucis longus muscle, and reflex changes. Dr. Hundley diagnosed "low back pain with EHL weakness and reflex changes secondary to HNP." He prescribed Percocet for pain, recommended bed rest and ordered an MRI.
8. Plaintiff underwent an MRI on October 7, 2006, which was read to show multilevel lumbar spondylotic changes particularly at L3-4, L4-5 and L5-S1, right-sided foraminal narrowing in conjunction with disc and facet changes at L3-4 abutting the far lateral right L3 root, central canal narrowing at L4-5 due to congenital and acquired features with associated biforaminal narrowing, and a left disc bulge at L5-S1 abutting the far lateral left L5 root without significant central stenosis.
9. Plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee, Representative, or Dependent for Workers' Compensation Benefits on October 12, 2006. Defendants denied plaintiff's claim via a Form 61, Denial of Workers' Compensation Claim dated November 2, 2006.
10. Plaintiff followed up with Dr. Mark Foster, Dr. Hundley's partner, on October 17, *Page 5 
2006 and again on December 5, 2006. Dr. Foster did not recommend surgery but referred plaintiff for physical therapy. As of December 5, 2006 Dr. Foster released plaintiff to return to medium level work.
11. Plaintiff saw Dr. Huffmon, a neurosurgeon, on November 28, 2006. Dr. Huffmon did a physical examination, noting among other things that plaintiff had an antalgic gait, right-sided SI joint tenderness, a positive straight leg raise on the right, weakness in the right EHL and a decrease in the right patellar reflex. Dr. Huffmon believed that all these findings were consistent with nerve root compression and that plaintiff is suffering from L5 radiculopathy. He also read the MRI as showing degenerative disc disease at L3-4, L4-5, L5-S1, a bilateral disc bulge at L3-4 and right-sided disc herniation at L4-5.
12. Dr. Huffmon's impression was that plaintiff was most symptomatic from the right-sided disc herniation at L4-5, and he recommended pain management. He noted that if plaintiff's right leg were to get weaker, he would need surgery as soon as possible. All of Dr. Huffmon's physical findings were consistent with plaintiff's history of the September 2006 injury and the MRI results.
13. Since his September 2006 injury, plaintiff has followed up with his family physician, Dr. Musselwhite, for pain medications and muscle relaxers. While on his pain medications, plaintiff can function at about 50 percent of his pre-injury capacity. Dr. Musselwhite opined that from time to time plaintiff would need pain medications and muscle relaxers for ongoing back pain.
14. On or about September 14, 2006 plaintiff suffered a specific traumatic incident of his assigned work whereby he sustained a low back injury when he pulled up on a jack hammer he was using when it became stuck. *Page 6 
15. Thereafter, in March 2007, plaintiff was at work and fell between the tailgates of two pickup trucks while loading a truck, aggravating his low back pain. Upon Dr. Musselwhite's referral, plaintiff went to Mr. Simmerman for physical therapy, beginning on April 30, 2007. Plaintiff had several sessions through May 24, 2007 and, in Mr. Simmerman's opinion, responded well to the therapy, with his goals largely satisfied.
16. As of the hearing before the Deputy Commissioner, plaintiff was still having intermittent right leg symptoms. Plaintiff has not yet reached maximum medical improvement for his back condition. Dr. Huffmon stated that plaintiff can continue to work in a limited capacity, with no lifting over 50 pounds and no prolonged bending, stooping or crawling.
17. Plaintiff missed some undetermined period of work because of his September 2006 injury but has continued working periodically in construction and has made substantial earnings. Plaintiff avoids heavy duty activities but is able to perform carpentry work.
18. Although plaintiff appears to have missed some time from work because of his September 2006 injury, he has not shown the periods he missed except for the period from on or about September 14, 2006 through December 5, 2006 when plaintiff was released to return to work. Plaintiff confirmed that he had worked extensively beginning in about January 2007. Plaintiff has not sustained any reduction in his earnings since December 5, 2006.
19. Based on the testimony of Drs. Musselwhite and Huffmon, plaintiff's current low back pain is causally related to the September 2006 injury plaintiff sustained, even taking into account a possible back aggravation in March 2007.
20. Defendants have not asserted any notice defense in this claim pursuant to N.C. Gen. Stat. § 97-22, nor have they contended that they have been prejudiced by any alleged delay in plaintiff's reporting of his injury. *Page 7 
21. The medical treatment that plaintiff has heretofore received for his September 2006 back injury has been reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability. Further medical treatment is reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a low back injury by specific traumatic incident arising out of and in the course of his employment with defendants on or about September 14, 2006. As such, plaintiff's low back injury and the related right leg radicular symptoms are a compensable injury. Plaintiff's average weekly wage of $630.49 yields a compensation rate of $420.35. N.C. Gen. Stat. § 97-2(6).
2. Although plaintiff appears to have been disabled for some period of time because of his compensable injury, plaintiff has not proved the relevant periods, except for the period from on or about September 14, 2006 through December 5, 2006. Further, it appears that plaintiff has had substantial earning capacity since at least January 2007. As such, plaintiff is not entitled to any indemnity compensation at this time except for the period from on or about September 14, 2006 through December 5, 2006 when he is entitled to temporary total disability compensation at a weekly compensation rate of $420.35. N.C. Gen. Stat. § 97-2(9) (2006). In order for plaintiff to recover disability and its extent. See Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185,345 S.E.2d 374, 378 (1986). In order to prove disability, plaintiff must demonstrate he is 1) incapable of earning the pre-injury wages in the same employment, 2) incapable of earning pre-injury wages in any other employment, and 3) that the incapacity to *Page 8 
earn was caused by his injury. See Hillard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
3. Plaintiff is entitled to have defendants pay for the medical treatment he has heretofore received for his compensable injury with and/or at the direction of New Hanover Medical Group, Wilmington Orthopedic Group, Atlantic Neurosurgical Spine Specialists, New Hanover Regional Medical Center and Physical Therapy Services of Wilmington, including but not limited to diagnostic testing, prescriptions and mileage. Plaintiff is also entitled to have defendants pay for further medical treatment as required for his compensable injury. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's low back condition and right leg radicular symptoms are a result of the compensable specific traumatic incident occurring on or about September 14, 2006. Thus, defendant's shall pay plaintiff, subject to an attorney fee hereinafter approved, temporary total disability compensation at the weekly rate of $420.35 from on or about September 14, 2006 through December 5, 2006.
2. Drs. Musselwhite and Huffmon ARE HEREBY DESIGNATED as plaintiff's treating physicians, and, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, defendants SHALL promptly authorize and pay for the treatment that either physician recommends for plaintiff's compensable injury, including but not limited to diagnostic testing, surgery, physical therapy, prescriptions and mileage. *Page 9 
3. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of 25% of the amount awarded to plaintiff in the paragraph 1 above. This amount shall be paid directly to plaintiff's counsel.
4. Defendants SHALL pay for the treatment that plaintiff has heretofore received for his compensable injury with and/or at the direction of New Hanover Medical Group, Wilmington Orthopedic Group, Atlantic Neurosurgical Spine Specialists, New Hanover Regional Medical Center and Physical Therapy Services of Wilmington, including but not limited to diagnostic testing, prescriptions and mileage.
5. Defendants shall pay the costs. As part of their costs, if they have not done so already, defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $354.00 to Dr. Musselwhite, and $551.00 to Dr. Foster.
This the16th day of April 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE BALLANCE COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1