The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. State Auto Insurance Companies was the carrier on the risk.
4. A Form 22 was submitted from which an average weekly wage may be determined.
5. Plaintiffs medical records and rehabilitation records were submitted into evidence as Stipulated Exhibit 1.
6. The issues before the Deputy Commissioner were: (i) whether plaintiff suffered a compensable injury by accident arising out of his employment with defendant-employer; and (ii) if so, what compensation, if any, is due the plaintiff.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 50 years old and had an eighth-grade education.
2. Prior to working for defendant-employer, plaintiff had worked for other electrical companies. He had worked for ReCor Electric for approximately five (5) years and for Revels Electric and Summey Building Systems for an unspecified period of time.
3. Plaintiff had worked for defendant-employer for approximately eight (8) years prior to the date of his injury. Plaintiff worked installing and wiring electrical fixtures in residential, commercial and industrial settings. Plaintiff is not a licensed electrician.
4. Plaintiff worked eight (8) hours and day, five (5) days a week at an hourly wage of $9.50. The Form 22 submitted by defendants shows fewer hours worked but is found not to be credible. Plaintiffs unchallenged testimony was to the effect that he worked eight hours a day five days a week and that defendant employer "loaned him from time to time to another company owned by defendant in order to keep him fully employed.
5. Plaintiffs average weekly was $380.00, yielding a compensation rate of $253.46.
6. Prior to plaintiffs injury, he was in good physical health. Plaintiff did suffer from depression prior to the accident. This depression had been diagnosed by plaintiffs family physician and plaintiff had continuously received treatment since the diagnosis in 1985. Plaintiff was taking Prozac, an anti-depressant, at the time of the injury; however, plaintiff considered himself to be dealing with his depression and that it had stabilized and the Full Commission concurs in this assessment.
7. On November 7, 1996, plaintiff was scheduled to work for the defendant-employer at a residence. Plaintiff was to install several receptacles and a ceiling fan electrical box. Plaintiff was loading his truck with ladders and wire when Kenneth Stroupe, the owner of the business, beckoned plaintiff to come into the shop and get some nails. As plaintiff was getting a handful of nails, he spotted a hundred foot extension cord on the floor that he thought he might need at the job site. Plaintiff bent down and reached for the extension cord and as he was coming up, he felt an intense pain burst across his lower back. This constituted a specific traumatic incident of the work assigned and led to inability to earn wages and is thus compensable under the Workers Compensation Act.
9. Plaintiff indicated to Mr. Stroupe that he had hurt his back and he would go out on the job to see what he could do.
10. Plaintiffs pain increased while he was driving to the job site. At the job site, plaintiff was unable to install the receptacles because of his pain and attempted to install the ceiling fan box. Plaintiff went into the attic in order to begin the installation only he felt so much pain that he was unable to install the box. Plaintiff drove back to the shop and told Mr. Stroupe he could not work because of the pain. Mr. Stroupe expressed anger and indicated that plaintiff should take his tools off the truck. Plaintiff was unable to do this, so Mr. Stroupe removed the tools and placed them in the trunk of plaintiffs car.
11. After two or three days of constant pain, plaintiff presented himself to the emergency room at Gaston Memorial Hospital. Plaintiff had no insurance coverage and his workers compensation situation had been brushed aside by his employer so he was given two (2) prescriptions for pain medications and told to go home. Plaintiff only had enough money to fill one of the prescriptions.
12. Plaintiff attempted to speak to Kenneth Stroupe and Ronald Stroupe concerning his claim for workers compensation. These conversations were met with great hostility and plaintiff did not attempt to contact the Stroupes again. Defendants denied the claim and provided neither medical help or loss of income compensation.
13. In December 1996, plaintiff sought assistance from Crisis Assistance Ministry. Plaintiff was advised to contact the Division of Vocational Rehabilitation Services of North Carolina in order to receive medical attention and vocational rehabilitation.
14. Plaintiff contacted the Division of Vocational Rehabilitation of North Carolina and was accepted in the program. Plaintiff was sent to R.S. Humble, M.D.
15. Dr. Humble treated plaintiff for a period of three (3) months at the expense of the Division of Vocational Rehabilitation of North Carolina. Initially, plaintiff was diagnosed with a lumbar strain, but ultimately it was determined that plaintiff had a herniated disc at L4, L5 and a protruding disc at L5, S1. Dr. Humble thought these discs wouldnot benefit from surgical intervention, but plaintiff is entitled to seek further medical advice and/or surgery with respect to his back injury.
16. Dr. Humble prescribed steroid medication and physical therapy. This conservative treatment was unsuccessful and Dr. Humble told plaintiff that there was nothing more than he could do for him. Dr. Humble released plaintiff not because plaintiff was cured but because there was nothing else Dr. Humble felt he could do for his patient. Plaintiff has not reached MMI and continues to have significant medical problems.
17. A Functional Capacity Evaluation was recommended and upon the evaluation having been taken, plaintiff was released with restrictions in March 1997. The restrictions and the continuing chronic pain preclude plaintiff from employment in the only work he is able to do for pay.
18. In the days following his injury, plaintiff had to spend from sixteen to eighteen hours a day lying down to relieve his severe pain. Asked to describe his pain level based upon a scale of one to ten where one is a pain you could easily ignore and ten is the most severe pain imaginable, plaintiff stated that on the day he went to Gaston Memorial Hospital, his pain was between an eight and one-half and a nine and one-half. At the time of the hearing, plaintiffs daily pain levels were about three and one-half to four and one-half, but after any activity whatsoever, his pain would accelerate to between six and seven and he would have to lie down to relieve his pain.
19. Asked if he has good days and bad days, plaintiff said most of his days were bad. He testified that prior to his injury, he was very active with his son, riding go-carts, going fishing, and riding bicycles. After his injury, he was not able to do any of the former activities. He testified that he had thrown a football briefly on one occasion and that was the most active he had been with his son. He described his days as mostly lying down and watching television or reading. Since his injury he stated that the only place he ever went was to a friends house where he could lie down, if needed.
20. Since the injury plaintiff can only stand for 45 minutes at one time before his pain becomes too great to tolerate. Plaintiff can sit for about one and one-half to two hours at a time. Plaintiff performs no chores around the boarding house where he lives, not even cleaning his room, as was required. After his injury plaintiff attempted to sweep his room one time but had to get someone else to finish it for him.
21. Plaintiff would like to return to work. He was happier when he was able to work and was working. However, plaintiff has not looked for work because he could not hold down a job due to his chronic and debilitating back pain.
22. Plaintiffs injury and subsequent pain are a direct and proximate result of the specific traumatic incident of November 7, 1996.
23. Plaintiffs pain and symptoms relating to depression have increased since the time of his injury. Plaintiffs depression makes it hard for him to deal with his job-caused chronic pain and his job-caused chronic pain exacerbates his depression. Plaintiffs job-caused chronic pain has made it impossible for him to be gainfully employed since November 7, 1996.
24. This appeal was brought by the insurer and by this Opinion and Award the Full Commission orders the insurer to make payment of benefits. A reasonable attorney fee for defending this appeal would be $1,000.00.
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On November 7, 1996, plaintiff sustained a specific traumatic injury arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of his compensable injury on November 7, 1996, plaintiff has not been able to hold any job and is entitled to total disability compensation from November 7, 1996 until this Commission has ordered that compensation should cease. N.C. Gen. Stat. 97-29.
3. As a result of his compensable injury on November 7, 1996, plaintiff is entitled to receive medical care that would effect a cure, lessen plaintiffs pain or lessen plaintiffs period of disability. N.C. Gen. Stat. 97-25.1.
4. Since this appeal was brought by the insurer and by this Opinion and Award the Full Commission orders the defendants to make payment of benefits, the Full Commission may (pursuant to N.C. Gen. Stat. 97-88) order that the cost to the injured employee of this appeal, including reasonable attorneys fees to be determined by the Full Commission, shall be paid by the insurer as part of the bill of costs. N.C. Gen. Stat. 97-88.
5. In order to receive workers compensation benefits, a plaintiff must first prove the existence of a disability as well as the extent of that disability. Hendrix v. Linn-Corriher-Corp., 317 N.C. 179, 185,345 S.E.2d 374, 378 (1986). To prove that he has a disability, the plaintiff must show that he has an injury that has caused him to be unable to earn wages in his past work. unable to earn wages in any other work, and that his disability is caused by his injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
6. To prove his inability to earn wages, a plaintiff may offer evidence in four ways: 1) he may offer medical evidence which shows that he is unable to earn wages in any job, 2) he may offer evidence that he is capable of earning some wages, but was unsuccessful in finding employment, 3) he may offer evidence that he is capable of earning some wages, but because of his age, education, experience, or other pre-existing factors, it would be futile for him to seek employment, or 4) he may offer evidence that he has obtained other employment but at a lesser wage than he was earning prior to his injury. Russell v. LowesProduct Distribution, 109 N.C. App. 762, 765, 425 S.E.2d 454, 457
(1993).
7. In addition to medical evidence to prove ability to earn wages, the Commission may also consider the plaintiffs own testimony regarding his pain and his ability to earn wages. Matthews v. Petroleum Tank Service,Inc., 108 N.C. App. 259, 266, 423 S.E.2d 532, 536 (1992); Niple v.Seawell Realty Indus. Co., 88 N.C. App. 136, 139, 362 S.E.2d 572, 574
(1987). Furthermore, pain, although not compensable in and of itself, must be considered by the Commission when determining the extent of a plaintiffs ability to work and earn wages. Matthews v. Petroleum TankService, Inc., 108 N.C. App. at 535, 423 S.E.2d at 265.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his total disability, plaintiff is entitled to disability compensation at the rate of $253.46 per week from November 7, 1996, and continuing until change of condition or further Order from the Industrial Commission. Defendants shall pay compensation which has accrued to date in a lump sum. Both the lump sum compensation and future weekly compensation shall be subject to an attorney fee approved in Paragraph 3 of this AWARD. After the lump sum has been paid, defendants shall pay $253.46 per week to plaintiff, with every fourth check going directly to plaintiffs counsel.
2. Defendants shall pay all medical expenses resulting from plaintiffs compensable injury of November 7, 1996. Inasmuch as this was a denied claim and plaintiff has gone without employer-provided medical care for more than two and a half years, plaintiff may see a physician or physicians of his own choosing, subject to further orders of the Industrial Commission.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this AWARD is hereby approved for plaintiffs counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiffs counsel. In regards to future compensation, plaintiffs counsel shall receive every fourth check.
4. Defendants shall pay the costs, including a $1,000.00 attorney fee to plaintiffs counsel for defending this appeal.
This 30th of July 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ J. HOWARD BUNN, JR. CHAIRMAN
 S/_____________ PAMELA T. YOUNG DEPUTY COMMISSIONER