ALFRED L. PACK, Employee, Plaintiff,
v.
HAPPY RENTZ, INC., Employer, KEY RISK INSURANCE COMPANY, INC., Carrier, Defendants.
No. COA07-129
Court of Appeals of North Carolina.
Filed October 2, 2007
This case not for publication
Barron & Berry, L.L.P., by Vance Barron, Jr., for plaintiff-appellee.
Teague, Rotenstreich, Stanaland, Fox & Holt, LLP, by Paul A. Daniels, for defendants-appellants.
TYSON, Judge.
Happy Rentz, Inc. ("Happy Rentz") and Key Risk Insurance Company, Inc. (collectively, "defendants") appeal from the Full Commission of the North Carolina Industrial Commission's ("the Commission") opinion and award granting Alfred L. Pack ("plaintiff") permanent total disability benefits. We affirm.

I. Background
Plaintiff was employed by Happy Rentz as a delivery truck driver. On 17 May 1999, plaintiff suffered an accidental injury when a 400-pound pallet fell onto his back at work and injured his left shoulder and neck. Plaintiff was sixty-two-years-old at the time of the injury and has not returned to work as a truck driver for Happy Rentz or any other employer in any capacity.
Plaintiff filed a claim for workers' compensation benefits. On 7 June 1999, defendants accepted the compensability of plaintiff's claim pursuant to N.C. Gen. Stat. § 97-18(d). Defendants began paying $339.32 per week to plaintiff.
On 2 October 2004, plaintiff filed a Form 33 requesting his claim to be assigned for hearing. Plaintiff asserted he was entitled to permanent total disability benefits. Defendants responded that plaintiff was not entitled to permanent total disability benefits because: (1) authorized physicians had released him to work with restrictions; (2) Happy Rentz offered plaintiff a position within his restrictions as an assistant sanitizer, but he unjustifiably refused the position; and (3) plaintiff's disability, if any, is due to conditions unrelated to his work injuries.
After his injury, plaintiff initially presented to Dr. Phillips Carter ("Dr. Carter"), an orthopedic surgeon. Dr. Carter performed two surgical operations on plaintiff's left rotator cuff. Dr. Carter also performed two surgical manipulations on plaintiff's left shoulder under anesthesia. On 3 August 2000, Dr. Carter found plaintiff's left rotator cuff had reached maximum medical improvement and assigned him a twenty percent permanent partial disability rating. Dr. Carter noted, "I do not think [plaintiff] can go back-to [sic] . . . doing heavy work." On 20 November 2000, Dr. Carter increased plaintiff's permanent partial disability rating to thirty percent. On 16 March 2001, Dr. Carter referred plaintiff to another orthopedic surgeon, Dr. James E. Nitka ("Dr. Nitka").
On 4 May 2001, plaintiff presented to Dr. Nitka. Dr. Nitka performed two cervical fusion operations on plaintiff's neck for a left-sided disc herniation at the C4-C5 and C5-C6 vertebrae. Dr. Nitka released plaintiff from any further treatment for his neck on 26 September 2002. Plaintiff continued to experience difficulties with his neck and left shoulder and obtained approval from the Commission on 29 April 2004, for a change of treating physician to yet another orthopedic surgeon, Dr. Peter G. Dalldorf ("Dr. Dalldorf").
On 27 October 2003, Dr. Dalldorf concluded plaintiff had reached maximum medical improvement and would never be able to drive a truck again. Dr. Dalldorf also noted plaintiff's work restrictions are "some light duty restrictions which involve a 10-pound lift and no use of the affected left arm above the level of his waist."
On 6 February 2004, plaintiff's vocational rehabilitation counselor, Amanda Ratliffe ("Ratliffe"), arranged for William McClure ("McClure"), a therapist, to perform a work task analysis on a new position called assistant sanitizer created by Happy Rentz. McClure concluded that plaintiff could perform the job requirements of an assistant sanitizer within the work restrictions imposed by Dr. Dalldorf.
Another vocational rehabilitation counselor, Dr. Ann T. Neulicht, ("Dr. Neulicht"), conducted an investigation of plaintiff's capacity to obtain employment in the marketplace. Dr. Neulicht testified:
Based on my review of the medical records, my interviews with [plaintiff], and the results of the Functional Capacity Evaluation and information from his physicians regarding functional capacity and residual capacity as well as his age, education, and training, there's no evidence that he's capable of sustained competitive work in even routine repetitive occupations.

His functional capacity has been listed as sedentary in nature and his prior job as a truck driver would be medium, so he cannot return to a job at [sic] truck driver and was precluded from that by Dr. Dalldorf and at the recommendation of his physical therapist. So the question would be could he return to other sedentary occupations, and based on the Functional Capacity Evaluation as well as the results of the Raleigh Vocational Center assessment, he cannot.

(Emphasis supplied).
Plaintiff also suffered from other medical problems unrelated to his compensable injury that affected his ability to work at various times. On 17 March 2004, Dr. Dalldorf performed a left carpal tunnel release and removed plaintiff from work for a period of four to eight weeks. On 14 September 2004, plaintiff underwent a prostate operation and was removed from work for an additional eight weeks. On 7 July 2005, Dr. Dalldorf performed a right carpal tunnel release and removed plaintiff from work for a period of thirty days.
On 13 June 2005, the matter was heard before Deputy Commissioner George T. Glenn, II ("Deputy Commissioner Glenn"). On 12 December 2005, Deputy Commissioner Glenn entered an opinion and award that concluded plaintiff "is permanently and totally disabled in light of his medical restrictions, age, education, and experience and it would be futile for Plaintiff to engage in a job search henceforth." Defendants appealed to the Full Commission.
On 21 June 2006, the Full Commission reviewed the matter. Plaintiff was sixty-eight years old at the time of the hearing. On 8 September 2006, the Commission, without receiving further evidence, entered an opinion and award that concluded: (1) plaintiff sustained a compensable injury by accident; (2) plaintiff's refusal to accept the position offered by Happy Rentz was justified because the job duties were within his work restrictions; (3) plaintiff has been and remains incapable of earning wages with Happy Rentz or any other employer in light of his medical restrictions, age, limited education, and lack of employment experience in clerical or office work; and (4) plaintiff is entitled to permanent total disability benefits. Defendants appeal.

II. Issues
Defendants argue the Commission erred by concluding plaintiff is entitled to permanent total disability benefits because: (1) he could perform the position as an assistant sanitizer offered by Happy Rentz; (2) the position was consistent with his work restrictions; (3) he refused to return to work in a position that was within his restrictions; and (4) plaintiff is not permanently and totally disabled due to his compensable injury.

III. Standard of Review
Our Supreme Court has stated:
[W]hen reviewing Industrial Commission decisions, appellate courts must examine "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, "even though there [is] evidence that would support findings to the contrary."
McRae v. Toastmaster, Inc., 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (quoting Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000); Jones v. Myrtle Desk Co., 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)). "[T]he full Commission is the sole judge of the weight and credibility of the evidence[.]" Deese, 352 N.C. at 116, 530 S.E.2d at 553. The Commission's mixed findings of fact and conclusions of law and its conclusions of law applying the facts are fully reviewable de novo by this Court. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982); Cauble v. Soft-Play, Inc., 124 N.C. App. 526, 528, 477 S.E.2d 678, 679 (1996), disc. rev. denied, 345 N.C. 751, 485 S.E.2d 49 (1997).

IV. The Position Offered Plaintiff
Defendants argue the Commission erred by concluding plaintiff is entitled to permanent total disability benefits and asserts plaintiff was offered and could perform the position as an assistant sanitizer, and the position was consistent with his work restrictions imposed by Dr. Dalldorf. Within this broad argument, defendants specifically argue the Commission's findings of fact numbered 12, 17, 18, 19, and 21 are not supported by any competent evidence.

A. Finding of Fact Numbered 12
Defendants specifically assert the Commission's conclusion within the finding of fact numbered 12 that "Mr. McClure's Work Task Analysis erroneously concluded that plaintiff could perform the job of Assistant Sanitizer within Dr. Dalldorf's restrictions" is erroneous. We disagree.
Finding of fact numbered 12 states:
12. Mr. McClure was asked to perform an analysis to determine whether plaintiff could perform the Assistant Sanitizer job within the work restrictions assigned by Dr. Dalldorf. Mr. McClure testified that Ms. Ratliffe gave him a form dated October 27, 2003, signed by Dr. Dalldorf, which proved to be an incomplete statement of plaintiff's restrictions. The form stated that the work restrictions for plaintiff were "light duty10 lb. lift, waist level left arm." Mr. McClure was not given Dr. Dalldorf's more complete clinical note of October 27, 2003, which stated specifically that the work restrictions included "no use of the affected left arm above the level of the waist." Thus, Mr. McClure's Work Task Analysis erroneously concluded that plaintiff could perform the job of Assistant Sanitizer within Dr. Dalldorf's restrictions. Several of the job tasks were clearly described in Mr. McClure's report as being between waist level and shoulder level, such as the use of a linen rack which was 56 inches off the floor, vertical storage drawers which were 4 to 51 inches from the floor, and a hand-wiping station which was 34 to 56 inches from the floor. Mr. McClure stated in his report, "Based on the work tasks identified, all vertical heights reflect to be at or below shoulder level," "Reaching above shoulder level: Infrequent," and "Reaching below shoulder level: Occasional frequent." Moreover, certain routine tasks normally associated with work done at the facility had been excluded by defendant employer from the job description of Assistant Sanitizer given to Mr. McClure.
(Emphasis supplied).
Ratliffe arranged for McClure to perform a work task analysis on the assistant sanitizer position created by Happy Rentz. Ratliffe testified she sent the work restrictions imposed by Dr. Dalldorf to McClure, but she could not definitively state whether she furnished the restrictions to McClure before he did his evaluation of the assistant sanitizer position.
McClure also testified about the information Ratliffe had furnished him about Dr. Dalldorf's work restrictions:
Q. Well, sir, let me show you Plaintiff's Exhibit 4 [Dr. Dalldorf's clinical note dated 27 October 2003 containing plaintiff's work restrictions]. I don't find either of these documents in your file. Can you confirm that, please?
A. I have not seen this document.
McClure further testified about the information he was given about plaintiff's work restrictions:
Q. I would like you to find out what actual information was given to you about the work restrictions placed on [plaintiff] by Mr.-Dr. Dalldorf in February 2004.
A. Well, I referred in my recommendations in my report regarding Dr. Dalldorf's work restrictions of light duty, ten pounds lift, waist level left arm, so I was informed prior to the analysis that that was a restriction imposed by Dr. Dalldorf on [plaintiff].
Q. All right, sir. You're referring to your report which I have marked as Plaintiff's Exhibit 5, is that correct?
A. That is correct. Yes, sir.
Q. All right. Now I ask you, sir, isn't it correct that your report assumes that he could do work up to shoulder level?
A. With his hands. That's correct.
This testimony is competent evidence to support the Commission's finding of fact numbered 12 that:
Mr. McClure was not given Dr. Dalldorf's more complete clinical note of October 27, 2003, which stated specifically that the work restrictions included "no use of the affected left arm above the level of the waist." Thus, Mr. McClure's Work Task Analysis erroneously concluded that plaintiff could perform the job of Assistant Sanitizer within Dr. Dalldorf's restrictions.
McClure's work task analysis is further competent evidence to support the Commission's finding of fact numbered 12. The report omits Dr. Dalldorf's work restrictions which included "no use of the affected left arm above the level of the waist." The report states Dr. Dalldorf's work restrictions on plaintiff were only, "light duty, 10 lbs lift, waist level, left arm."
In describing the physical demands of the assistant sanitizer position, the report stated reaching above shoulder level is "[i]nfrequent" and reaching below shoulder level is "[o]ccasional/frequent." The report also listed the work surface heights contained in finding of fact numbered 12. McClure further testified about the work surface heights: Q. So the work heights were at or below shoulder level. That means that there were some work heights which were between waist level and shoulder level, isn't that correct?

A. That's correct.
The Commission's finding of fact numbered 12 is supported by competent evidence. The Commission's conclusion that "McClure's Work Task Analysis erroneously concluded that plaintiff could perform the job of Assistant Sanitizer within Dr. Dalldorf's restrictions" is supported by findings of fact based upon competent evidence that McClure did not take into account plaintiff's work restrictions, which included "no use of the affected left arm above the level of the waist." The Commission's findings of fact are "conclusive on appeal" when supported by "any competent evidence." McRae, 358 N.C. at 496, 597 S.E.2d at 700.
Also, "[t]he full Commission is the sole judge of the weight and credibility of the evidence[.]" Deese, 352 N.C. at 116, 530 S.E.2d at 553. Here, the Commission found McClure's conclusion that plaintiff could perform the requirements of the assistant sanitizer position within Dr. Dalldorf's work restrictions not credible. Id. This assignment of error is overruled.

B. Findings of Fact Numbered 17 through 19
Defendants argue findings of fact numbered 17 through 19 are not supported by competent evidence. Defendants assert the Commission erred by adopting Dr. Neulight's opinions set out in these findings of fact because her opinions were based on the mistaken belief that Dr. Dalldorf's restrictions applied to both arms. We disagree. Findings of fact numbered 17 through 19 state:
17. Plaintiff's prior work experience as a truck driver and as a substation electrician was at the medium level, a degree of exertion that he can no longer perform. The Raleigh Vocational Center tested plaintiff's ability to perform routine repetitive tasks at the sedentary exertion level, within Dr. Dalldorf's restrictions, and specifically with no use of the left arm above waist level. Testing revealed that plaintiff could only work at the low 26th percentile of competitive norms, which is deemed non-competitive according to Dr. Neulicht. In order to achieve that level of performance, it was noted that plaintiff had to take pain medication and the tester observed that due to his pain symptoms, plaintiff was moderately limited in his ability to remember and carry out detailed instructions and to perform at a consistent pace without an unreasonable number of rest periods. Plaintiff could not sustain a production or piece-rate pace of work.
18. Due to the combination of all these factors, Dr. Neulicht was of the opinion, and the Commission finds, that plaintiff is not capable of sustained competitive work in even routine, repetitive, and unskilled occupations.
19. Dr. Neulicht was of the opinion, and the Commission so finds, that the job of Assistant Sanitizer at defendant-employer was a job compiled of sedentary tasks extracted from the normal work routines of jobs that are at the medium exertion level, such as laundry duties and dish washing, which usually require lifting more than ten pounds, and silver-polishing, which is light in exertion but requires constant use of the hands. There was no credible evidence that such a job, as defined by defendant-employer, exists elsewhere in the competitive job market, since dish washing jobs require loading, unloading, and lifting dishes; laundry jobs require lifting laundry to and from a washer to a dryer; and silver-polishing jobs require a competitive pace of work performance with dexterity and a firm grasp.
Here, defendants do not argue the above findings of fact are not supported by competent evidence. These findings are supported by Dr. Neulicht's testimony as noted above. Instead, defendants assert Dr. Neulicht's findings are "not credible." Again, "[t]he full Commission is the sole judge of the weight and credibility of the evidence[.]" Deese, 352 N.C. at 116, 530 S.E.2d at 553. "[T]he Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." Id. This assignment of error is overruled.

C. Finding of Fact Numbered 21
Defendants argue finding of fact numbered 21 is not supported by competent evidence. Defendants assert plaintiff's refusal to accept the assistant sanitizer position with Happy Rentz was not justified. We disagree.
Finding of fact numbered 21 states:
21. Although the job of Assistant Sanitizer was specially designed by defendant-employer for plaintiff, another employee filled the position for defendant-employer after plaintiff turned down the job in March 2004. Thus, the job is not make work. However, the Commission finds that the Assistant Sanitizer position was not within his restrictions and not suitable for plaintiff, and, therefore, his refusal to perform the job was justified.
Dr. Dalldorf noted plaintiff's work restrictions are, "some light duty restrictions which involve a 10-pound lift and no use of the affected left arm above the level of his waist." (Emphasis supplied). As shown above, McClure's Work Task Analysis clearly shows the assistant sanitizer position offered by Happy Rentz involves plaintiff using his left arm above his waist and shoulder. N.C. Gen. Stat. § 97-32 (2005) provides, "[i]f an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." Here, the Commission found and concluded plaintiff was justified in refusing to accept the assistant sanitizer position offered by Happy Rentz because the duties of the position did not comport with his work restrictions set forth by Dr. Dalldorf. See Oliver v. Lane Co., 143 N.C. App. 167, 171, 544 S.E.2d 606, 608 (2001) (The plaintiff was justified in refusing the employer's offered job, which consisted of highly repetitive motion involving the hand and wrist and was in direct conflict with her doctor's recommendation.).
The Commission's finding of fact numbered 21 is supported by competent evidence. The Commission's findings of fact are "conclusive on appeal" when supported by "any competent evidence." McRae, 358 N.C. at 496, 597 S.E.2d at 700. The Commission's conclusion that plaintiff justifiably refused to accept the position offered by Happy Rentz is supported by its finding of fact. This assignment of error is overruled.

V. Permanent Total Disability
Defendants argue plaintiff is not permanently and totally disabled due to his compensable injury. Defendants assert the Commission's findings of fact do not support its conclusion of law that plaintiff is entitled to permanent total disability benefits. We disagree. Under the North Carolina's Workers' Compensation Act, "[t]he term `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005) (emphasis supplied). "In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986).
Our Supreme Court has stated:
[I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (internal citation omitted).
In Russell v. Lowes Product Distribution, this Court set out four separate and distinct ways a plaintiff can carry his burden to prove disability:
The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (emphasis supplied) (internal citations omitted).
The Commission found as fact:
16. Dr. Neulicht's opinion was based on plaintiff's age, education, training and other factors. Dr. Neulicht found that plaintiff has a very limited education, having left school at age 16 when he was in the seventh grade. Further, in April 2004, Ms. Ratliffe requested that plaintiff attend Guilford Technical Community College ("GTCC") to obtain his G.E.D. Plaintiff was given placement tests at GTCC in May 2004, which placed him at grade two in reading, at less than grade one in mathematics, and less than grade one in language arts. Dr. Neulicht found that plaintiff is functionally illiterate and has no clerical skills.

17. Plaintiff's prior work experience as a truck driver and as a substation electrician was at the medium level, a degree of exertion that he can no longer perform. The Raleigh Vocational Center tested plaintiffs ability to perform routine repetitive tasks at the sedentary exertion level, within Dr. Dalldorf's restrictions, and specifically with no use of the left arm above waist level. Testing revealed that plaintiff could only work at the low 26th percentile of competitive norms, which is deemed non-competitive according to Dr. Neulicht. In order to achieve that level of performance, it was noted that plaintiff had to take pain medication and the tester observed that due to his pain symptoms, plaintiff was moderately limited in his ability to remember and carry out detailed instructions and to perform at a consistent pace without an unreasonable number of rest periods. Plaintiff could not sustain a production or piece-rate pace of work.

18. Due to the combination of all these factors, Dr. Neulicht was of the opinion, and the Commission finds, that plaintiff is not capable of sustained competitive work in even routine, repetitive, and unskilled occupations.

(Emphasis supplied).
The Commission concluded plaintiff was entitled to permanent total disability under the third Russell factor:
3. The greater weight of the medical evidence indicates that plaintiff is currently unable to work and will continue to be unable to work in the competitive labor market in the future. Vocational rehabilitation professionals have been unsuccessful in any attempt to find suitable work for plaintiff, other than the position offered by defendant-employer which was not within plaintiff's restrictions and therefore not suitable employment. Therefore, in light of [plaintiff's] medical restrictions, advanced age, very limited education, and lack of employment experience in clerical or office work, plaintiff has been and remains incapable of earning wages with defendant-employer or in any other employment since May 17, 1999.
(Emphasis supplied).
Plaintiff carried his burden to prove he is entitled to permanent total disability through "the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment." Russell, 108 N.C. App. at 765, 425 S.E.2d at 457. The Commission's findings of fact support the conclusion of law that plaintiff is entitled to permanent total disability compensation benefits. This assignment of error is overruled.

VI. Conclusion
The duties of the assistant sanitizer position offered by Happy Rentz were not within Dr. Dalldorf's work restrictions for plaintiff. Plaintiff justifiably refused to accept the position. Oliver, 143 N.C. App. at 171, 544 S.E.2d at 608. The Commission's findings of fact are supported by competent evidence and the findings of fact support the conclusion of law plaintiff is entitled to permanent total disability compensation benefits. McRae, 358 N.C. at 496, 597 S.E.2d at 700. The Commission's opinion and award is affirmed.
Affirmed.
Judges McGEE and ELMORE concur.
Report per Rule 30(e).