***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Federated Mutual Ins Co. (hereinafter referred to as "Defendant-Carrier") is correctly named, and provided workers' compensation insurance coverage to Dilmar Oil Company (hereinafter referred to as "Defendant-Employer") at all times relevant to these proceedings.
4. Plaintiff's average weekly wage at all times relevant to these proceedings was $741.37.
5. Plaintiff sustained a compensable injury by accident arising out of and in the course and in the scope of his employment with Defendant on or about February 22, 2006.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Pre-trial Agreement;
 b. Stipulated Exhibit two (2) — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit three (3) — Plaintiff's medical records;
 d. Stipulated Exhibit four (4) — Various documents, including:
 i. Plaintiff's personnel file with Defendant-Employer;
 ii. Accident report from the April 2, 2006 motor vehicle accident;
 iii. Discovery responses.
 *********** *Page 3 ISSUE
The issue for determination is whether Plaintiff's current lower back condition is causally related to his February 22, 2006 work injury, or whether Plaintiff's current lower back condition is causally related to his April 2, 2006 motor vehicle accident?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 42 years old, with a date of birth of April 1, 1966. Plaintiff has a high school diploma, and obtained further training for supervising chemical clean-up and truck driving. Plaintiff's work history consists of working as a truck driver, as well as working for a company that provided high-pressure water cleaning services. At the time of the hearing before the Deputy Commissioner, Plaintiff had been working for Defendant-Employer for over two (2) years as a warehouse/truck driver.
2. On February 22, 2006, Plaintiff was pulling orders in Defendant-Employer's warehouse. As Plaintiff bent down to grab a box of antifreeze, he felt pain in his lower back. Plaintiff informed his supervisor, Mr. Bobby Smith, and filed a Form 18 for a back injury. Defendants filed a Form 60 dated May 23, 2006, accepting Plaintiff's claim as compensable.
3. Following Plaintiff's February 22, 2006 work injury, he worked for two (2) more days, after which Defendant-Employer directed him to present to Doctors' Urgent Care in Wilmington, North Carolina for treatment of his lower back injury. On February 24, 2006, Dr. Richard Grant Joslin at Doctor's Urgent Care saw Plaintiff for complaints of lower back pain and pain into the upper left thigh. Dr. Joslin ordered x-rays, which were negative, diagnosed Plaintiff *Page 4 
with a lumbar strain, and assigned work restrictions of no lifting more than 10 pounds, as well as no pushing/pulling more than 20 pounds.
4. On February 27, 2006, Plaintiff returned to Doctor's Urgent Care, at which time Dr. Amanda Trimpey saw him. At this visit, Plaintiff complained of pain and numbness going down into the left lower extremity. Upon physical examination, Plaintiff had positive straight-leg raising on the right and negative straight-leg raising on the left. Dr. Trimpey maintained the work restrictions of no lifting more than 10 pounds, no pushing/pulling more than 20 pounds, and advised Plaintiff to change positions frequently. Dr. Trimpey also ordered that Plaintiff participate in physical therapy.
5. Plaintiff continued a course of conservative treatment for a lower back strain with Doctor's Urgent Care spanning a total of six (6) visits from February 24, 2006 through March 27, 2006. During Plaintiff's treatment with Doctor's Urgent Care, the treating physicians consistently diagnosed him with a lower back strain without evidence of radicular symptoms below the knee level. Plaintiff consistently reported symptomatic improvement of his lower back pain throughout this treatment.
6. On March 21, 2006, Mr. Samuel Grant Meyers, II, a physician's assistant, saw Plaintiff. At that time, Plaintiff complained of soreness in his lower back after working out with weights at physical therapy. Physician's assistant Meyers ordered that Plaintiff lift no more than 20 pounds, pull no more than 25 pounds, and apply ice and heat to his back.
7. On March 22, 2006, Plaintiff returned to restricted-duty work with Defendant-Employer, driving a warehouse forklift. Plaintiff was planning to return to full-duty work with Defendant-Employer on April 3, 2006, after his release by the physicians at Doctor's Urgent *Page 5 
Care. Mr. Smith, Plaintiff's supervisor and warehouse manager, confirmed Plaintiff's plan to return to full-duty work on April 3, 2006 in his hearing testimony.
8. At Plaintiff's next visit on March 27, 2006, physician's assistant Meyers noted that Plaintiff was making progress. Physician's assistant Meyers decreased Plaintiff's work restrictions to 25 pounds lifting and 30 pounds pushing/pulling, which constituted a medium-level work category, and scheduled him to return the following Friday. Physician's assistant Meyers was of the opinion that as of the March 27, 2006 visit, Plaintiff's lower back condition was stable, and he was "heading in the direction" of a release from care. Although physician's assistant Meyers did not specifically recall telling Plaintiff that he would release him at the next visit, the testimony of both Plaintiff and Mr. Smith leads to this conclusion. Physician's assistant Meyers ultimately agreed that, more likely than not, Plaintiff would have been released from care on his next appointment scheduled for April 3, 2006, but for the April 2, 2006 motor vehicle accident. However, there is no evidence in the record regarding whether either physician's assistant Meyers or any of the physicians who treated Plaintiff at Doctor's Urgent Care were going to place him at maximum medical improvement, or assign him permanent work restrictions or a permanent partial disability rating.
9. On April 2, 2006, the day before Plaintiff was to return to Doctor's Urgent Care for a release from care back to full-duty work, Plaintiff sustained an injury to his lower back in a motor vehicle accident. Plaintiff was driving a Camaro in the right-hand lane of the road when the vehicle in the left-hand lane side-swiped him and knocked his vehicle into the curb, causing it to strike a telephone pole. The accident report done by the investigating police officer indicates that Plaintiff's vehicle left 25 feet of tire impressions before impact, was traveling 25 *Page 6 
miles per hour at impact, and traveled 20 additional feet after impact. The vehicle that Plaintiff was operating was, by his own admission, "totaled."
10. Immediately following the April 2, 2006 motor vehicle accident, Plaintiff's wife drove him from the accident scene to the emergency department at New Hanover Regional Medical Center. Plaintiff presented with complaints of lower back and neck pain. The emergency room physicians referred Plaintiff for further care to Dr. Jack Wayne Bowling and Dr. Mark Dupree Foster, both of whom are orthopaedic surgeons, and discharged him with a prescription for Vicodin.
11. On April 6, 2006, Plaintiff presented to Dr. Bowling. At this initial visit, Plaintiff reported to Dr. Bowling the history of his February 22, 2006 work injury, and that "he was 90% ready to return to work until his accident." Further, Plaintiff complained that since the April 2, 2006 motor vehicle accident, he was experiencing severe pain in his lower back, and that his pain was radiating into both buttocks. Plaintiff did not previously experience radicular pain. Dr. Bowling diagnosed Plaintiff with a lumbar strain, prescribed Percocet and physical therapy, and took Plaintiff out of work.
12. Plaintiff underwent a course of physical therapy ordered by Dr. Bowling with HealthSouth in Wilmington, North Carolina from April 14 through 21, 2006, reporting only minimal improvement. On April 21, 2006, Plaintiff returned to Dr. Bowling for a re-check of his radicular lower back pain. At that visit, Plaintiff reported lower back pain radiating down the back of his posterior thighs bilaterally, numbness, and legs giving away. All of these were new symptoms following the April 2, 2006 motor vehicle accident. As a result, Dr. Bowling ordered lumbar magnetic resonance imaging (MRI). *Page 7 
13. On April 25, 2006, Plaintiff underwent the lumbar MRI. This MRI revealed multi-level degenerative changes with moderate left paracentral spinal stenosis, a moderate-sized, left paracentral disc protrusion at the L5-S1 level of the spine, and moderate foraminal stenosis at the L5 level of the spine. Following the MRI, Dr. Bowling, a hip and knee specialist, referred Plaintiff to Dr. Foster, a spine specialist in the same practice group.
14. On May 19, 2006, Dr. Foster diagnosed Plaintiff with lumbar spondylosis, lumbar degenerative disc disease, and lower back pain. Dr. Foster testified that Plaintiff's lower back pain complaints, his negative straight-leg raise testing, and his lack of below-the-knee radicular pain did not correlate with the MRI findings of a herniated disc. Dr. Foster opined that Plaintiff's herniated disc was "asymptomatic," that his lower back pain complaints were more consistent with arthritis than with the herniated disc, and that he did not require surgery.
15. Effective May 22, 2006, Dr. Foster released Plaintiff to work full-duty with no restrictions. Plaintiff returned to work for Defendant-Employer on a full-duty basis on May 23, 2006, and remained so employed at the time of the hearing before the Deputy Commissioner.
16. From June 26, 2006 through November 9, 2006, Plaintiff treated with Dr. John Hunter Knab, an anesthesiologist and pain management specialist. The parties did not depose Dr. Knab, and his medical records contain no opinions on any of the relevant causation issues.
17. On November 15, 2006, Plaintiff returned to Dr. Foster for a final visit. Dr. Foster noted that Plaintiff "reports that he was on the verge of returning to work at the time of his April motor vehicle crash." At this visit, Plaintiff reported difficulty maintaining his full-duty work schedule. Dr. Foster recommended a functional capacity evaluation (FCE), which never took place. Dr. Foster clarified in his deposition that the recommendation for a FCE did not necessarily mean that work restrictions would have been assigned. On December 7, 2006, Dr. *Page 8 
Foster issued a work note making clear that Plaintiff remained "released back to full duty with no restrictions or limitations."
18. On February 2, 2007, exactly 10 months after the April 2, 2006 motor vehicle accident, Plaintiff presented to Dr. Adam Pullan Brown, a neurosurgeon. Dr. Brown ordered a repeat lumbar MRI, which revealed essentially unchanged findings as compared to the prior April 25, 2006 lumbar MRI. Dr. Brown recommended that Plaintiff lose weight and perform the exercises given to him during his previous physical therapy. Further, Dr. Brown agreed with Dr. Foster that the herniated disc was an incidental finding not correlative of Plaintiff's lower back pain complaints, and that surgery probably would not be necessary.
19. At his deposition, Dr. Bowling testified that he had no opinion regarding the causation of Plaintiff's lower back condition following the April 2, 2006 motor vehicle accident. Further, Dr. Bowling stated that he could not apportion causation between the February 22, 2006 work injury and the April 2, 2006 motor vehicle accident. Finally, Dr. Bowling described his treatment of Plaintiff as being temporally related to the April 2, 2006 motor vehicle accident.
20. At his deposition, Dr. Foster testified that, assuming Plaintiff to be stable and on the verge of returning to work from the February 22, 2006 work injury at the time of the April 2, 2006 motor vehicle accident, then he would view the work injury and the motor vehicle accident as "distinctly separate events." Further, Dr. Foster opined that Plaintiff's pain and symptoms following the April 2, 2006 motor vehicle accident were solely due to the motor vehicle accident. The Full Commission gives great weight to the testimony of Dr. Foster.
21. The testimony of physician's assistant Meyers indicates that he found Plaintiff to be stable with regard to his February 22, 2006 work injury at the time of the April 2, 2006 motor vehicle accident. Moreover, physician's assistant Meyers testified that, more likely than not, *Page 9 
Plaintiff would have been released from care at his next appointment on April 3, 2006, but for the April 2, 2006 motor vehicle accident. The Full Commission gives great weight to the testimony of physician's assistant Meyers.
22. Plaintiff presented to Dr. Donald David Getz, an orthopaedic surgeon, for an independent medical examination (IME) on October 3, 2007. Dr. Getz reviewed all of the relevant medical records following Plaintiff's February 22, 2006 work injury, and also following the April 2, 2006 motor vehicle accident. In addition, Dr. Getz took a full history directly from Plaintiff and performed a physical examination of him. Based upon Dr. Getz's review of Plaintiff's medical records, along with his physical examination and history, Dr. Getz rendered diagnoses of symptom magnification and of degenerative disc disease of the lumbar spine, and concluded that he did not need any type of permanent work restrictions.
23. Dr. Getz is of the opinion that Plaintiff's lumbar degenerative disc disease is not directly caused by either the February 22, 2006 work injury or the April 2, 2006 motor vehicle accident, but that both events caused transient exacerbations of Plaintiff's underlying and pre-existing degenerative disc disease. Dr. Getz concluded that Plaintiff was at a medium-level work category; that he "returned to baseline" from the work-related exacerbation of his underlying degenerative disc disease by the time of the April 2, 2006 motor vehicle accident; and that he had no permanent partial disability rating in connection with his February 22, 2006 work injury. Dr. Getz further opined that, after the April 2, 2006 motor vehicle accident, the subjective nature of Plaintiff's lower back pain worsened, and his frequency of treatment and number of physician visits intensified, despite the clear prior expectation that his treatment for the February 22, 2006 work injury was near its terminus when the motor vehicle accident occurred. Finally, Dr. Getz opined that Plaintiff's lower back pain and treatment following the April 2, 2006 motor vehicle *Page 10 
accident are not causally related to the February 22, 2006 work injury, but are the result of the motor vehicle accident, alone. The Full Commission gives great weight to the testimony of Dr. Getz, in this case.
24. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff returned to his pre-work injury level of functionality with respect to his lower back condition before his April 2, 2006 motor vehicle accident. The April 2, 2006 motor vehicle accident caused a new and distinct injury or aggravation to Plaintiff's lower back which is not compensable.
25. Plaintiff was back at work performing at the medium-duty level prior to the April 2, 2006 motor vehicle accident and expected to return to full-duty work the next day. As a result of the April 2, 2006 motor vehicle accident, Plaintiff had to go totally out of work. Plaintiff's disability after April 2, 2006 is related solely to the motor vehicle accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer on February 22, 2006. N.C. Gen. Stat. § 97-2(6) (2007).
2. Plaintiff returned to his pre-work injury level of functionality with respect to his lower back condition before his April 2, 2006 motor vehicle accident. Therefore, Plaintiff's disability after the April 2, 2006 motor vehicle accident is not causally related to his February 22, *Page 11 
2006 compensable work injury. In Carter v. Northern Telecom, the North Carolina Court of Appeals held that:
 In determining whether the aggravation of an injury or a distinct new injury is compensable, a claimant must show that the primary injury arises out of and in the course of employment and that `every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.' Carter v. Northern Telecom, 123 N.C App. 547, 550, 473 S.E.2d 774, 776 (1996), citing Starr v. Paper Co., 8 N.C. App. 604, 611, 175 S.E.2d 342, 347, cert. denied, 277 N.C. 112 (1970) (quoting Larson's Workmen's Compensation Law § 13.00).
3. The controlling question in this case, as in Carter, is whether Plaintiff's current lower back condition can be sufficiently related back to the original February 22, 2006 work injury, or whether the intervening April 2, 2006 motor vehicle accident is responsible for his current condition. Id.
4. Carter addressed facts substantially similar to those in the case at bar, where the plaintiff in that case suffered a compensable work injury to her right upper extremity, and then received an anticipated release to return to work from her treating physician, due to the resolution of the work injury. Subsequently, the plaintiff in Carter sustained injuries to both shoulders in a motor vehicle accident just days before her expected return to work, rendering her unable to return to work. The North Carolina Court of Appeals affirmed the Full Commission's finding that expert medical testimony from the plaintiff's treating physicians established that the condition following the motor vehicle accident had no causal relationship to the compensable work injury. Carter, at 550-551, 473 S.E.2d at 776.
5. As in Carter, Plaintiff's April 2, 2006 motor vehicle accident herein, in and of itself, is neither a natural consequence nor a causal result of the February 22, 2006 work injury. *Page 12 
Plaintiff's lower back condition stabilized, and he returned to his pre-work injury level of functionality with respect to his lower back condition prior to his April 2, 2006 motor vehicle accident. Roper v.J.P. Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983). Based upon the testimony of Dr. Foster, Dr. Getz, physician's assistant Meyers, as well as Plaintiff himself, his lower back was stable, and he was ready to return to work when the April 2, 2006 motor vehicle accident occurred. Thus, the April 2, 2006 motor vehicle accident caused new and distinct lower back injuries. Carter v. Northern Telecom, 123 N.C. App. 547,473 S.E.2d 774, (1996); Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980).
6. Plaintiff contends that Horne v. Universal Leaf Tobacco Processors
controls in this case, and supports his contention that his April 2, 2006 motor vehicle accident is a compensable aggravation of his February 22, 2006 work injury. Horne v. Universal Leaf Tobacco Processors,119 N.C. App. 682, 459 S.E.2d 797 (1995). In Horne, the North Carolina Court of Appeals based their opinion on uncontradicted medical expert testimony that the plaintiff's recurrent disc rupture actually preceded the motor vehicle accident in that case; the plaintiff was still symptomatic with unstabilized back pain before the motor vehicle accident, the motor vehicle accident actually worsened the plaintiff's disc, and the plaintiff's primary orthopaedist testified that all of the back pathology stemmed from the work injury. Id. at 686-687, 459 S.E.2d 800-801.
7. In the case at bar, however, Defendants established through competent medical evidence that Plaintiff sustained no compensable aggravation of his February 22, 2006 work injury. The greater weight of the evidence established that Plaintiff's pre-existing degenerative disc disease, aggravated by his February 22, 2006 work injury, stabilized and he returned to his baseline state before the April 2, 2006 motor vehicle accident. Both Dr. Getz and Dr. Mark *Page 13 
Dupree Foster related the treatment that Plaintiff received for his back following the April 2, 2006 motor vehicle accident solely to the motor vehicle accident. The opinions of Dr. Foster, physician's assistant Meyers, and Dr. Getz are further borne out by the fact that Plaintiff began reporting new symptoms of bilateral below-the-knee radial pain, as well as bilateral leg numbness only after the April 2, 2006 motor vehicle accident, whereas prior to the motor vehicle accident, he was consistently reporting resolving lower back pain without radiation that was stable enough to warrant going back to work and being released from further care. Therefore, there is insufficient evidence to causally relate Plaintiff's medical condition after the April 2, 2006 motor vehicle accident to his February 22, 2006 work injury. Reinninger v.Prestige Fabricators, Inc., 136 N.C. App. 255, 523 S.E.2d 720 (1999);Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997);Carter, 123 N.C App. 547, 550, 473 S.E.2d 774, 776 (1996).
7. Plaintiff's disability after April 2, 2006 is related solely to his motor vehicle accident. "The employee seeking compensation under the Act bears the burden of proving the existence of his disability and its extent." Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185 345 S.E.2d 374,378 (1986). Any claim by Plaintiff for ongoing medical compensation and indemnity compensation due to his current back complaints must be denied. N.C. Gen. Stat. §§ 97-2(6), 97-2(19) (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for ongoing medical and/or indemnity compensation due to his current back complaints is DENIED. Defendants are not responsible for any medical treatment *Page 14 
after the April 2, 2006 motor vehicle accident, other than any already scheduled follow-up at Doctor's Urgent Care in Wilmington, North Carolina.
2. Defendants shall pay the costs of these proceedings, including all expert witness fees, if not already paid.
This the ___ day of February 2009.
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________________ PAMELA T. YOUNG CHAIR
S/_______________________ DANNY LEE McDONALD COMMISSIONER